MAANUM, Appellant, vs. THE CITY OF MADISON, Respondent.

*September 27 — October 20, 1899.*

*Court and jury: Directing verdict: Municipal corporations: Steam roller in street: Frightening horses: Assumption of risk.*

1. When the facts proved, the probabilities, and all reasonable inferences are overwhelmingly against the plaintiff's case, the trial court should, on motion, direct a verdict for defendant.

2. In an action against a city for personal injuries occasioned by the horses behind which plaintiff was riding becoming frightened at a steam roller and running away, the evidence (stated in the opinion) is *held* to show, as matter of law, that plaintiff had repeated warnings of the presence of the roller and abundant opportunity to turn upon a side street, and that if she had looked she could have seen the roller down the road 700 feet away. She therefore assumed the risk of driving past it.

3. In such case, the claim that the roller was suddenly started as the team approached was not made in the original complaint, but appeared for the first time after plaintiff's examination as an adverse party, and was supported only by the inconclusive and contradictory testimony of plaintiff and her daughters, while it was negatived by every other witness and by every reasonable probability in the case. *Held*, that the court properly refused to submit the issue to the jury.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

The plaintiff's cause of action may be briefly stated as follows: On October 14, 1895, plaintiff was riding along Monroe street, in the city of *Madison*, in a carriage. The horses became frightened at the city's steam roller, which was suddenly started without warning, and the plaintiff was thrown out of the carriage and injured. The complaint contains some allegations in regard to a "deep and dangerous ditch in the street," left without a railing or guard, and that the street was too narrow at this point for a team to be driven along safely; but this claim seems to have been abandoned on the trial, and the right to recover was apparently based

upon the existence of the steam roller in the street, and its sudden starting without warning, occasioning fright to the team behind which she was riding. The answer admitted the presence of the steam roller in the street. denied the in sufficiency of the street, and set up the defense of contributory negligence. At the close of the evidence the court directed a verdict for the defendant. The plaintiff brings the case here for review on appeal from the judgment.

For the appellant there were briefs by *Bushnell & Hall*, and oral argument by *A. R. Bushnell* and *F. W. Hall*.

*John A. Aylward*, city attorney, and *R. M. Bashford*, of counsel, for the respondent.

Bardeen, J. The main question for our determination is whether, under all the evidence, the court ought to have submitted the case to the jury. When the defendant made the motion to direct a verdict the question presented to the trial court was one of mixed law and fact. It became his duty to weigh and consider the testimony in the case, and to apply to it those rules of law which are deemed controlling in cases of this kind. His duty was greater than in cases where a nonsuit is asked. Oftentimes in those cases the evidence will leave some of the controlling questions in doubt. There may be room, upon the facts, for different inferences or conclusions to be drawn. The court must always construe them in the light most favorable to the plaintiff. Giving them all the weight which the jury would be at liberty to find for them, the court must be able to say that there is no evidence to go to the jury, in order to justify a nonsuit. But in cases where a verdict is asked to be directed the situation is sometimes very different. It is then the duty of the court to pass upon *all* the testimony. The testimony of the defendant many times clears up the doubt, and makes it conclusive that only one possible inference can be drawn from the facts. Sometimes proof is offered by

way of avoidance, entirely undisputed, which completely undermines the plaintiff's case. Again, the proof so offered may be so overwhelming one way that no reasonable inference can be drawn from it to support the plaintiff's case. In all such cases it is the duty of the court to grapple with the situation, and make such a disposition of the case as existing rules of practice and controlling principles of law demand. As said in *Finkelston v. C., M. & St. P. R. Co.* 94 Wis. 270, the court thereby discharges a judicial duty essential to the due administration of justice, and by no means trenches on the province of the jury. With all the helps the trial judge has at hand, his decision so made is entitled to weight, and in doubtful cases to controlling weight. *Powell v. Ashland I. & S. Co.* 98 Wis. 35. In view of the many decisions upon the question, it is hardly necessary to say that the courts of this state will not grant nonsuits or direct verdicts where there are facts proved from which, either directly or by reasonable inference, the jury may reach a different conclusion. It is equally true that, when the facts, the probabilities, and all reasonable inferences are overwhelmingly against the plaintiff's case, the court will exercise its judicial functions and direct a verdict for defendant. In the light of these rules of law we will investigate the facts in this case.

The town of Madison was building a section of road near Wingra Park. The town had arranged with the authorities of the city of *Madison* for the use of its steam roller. The roller was being taken to its destination by the city employees. It arrived at a point on Monroe street about 150 feet east from the railroad crossing, pulled out to one side, and stopped. The plaintiff approached from the west, riding with her husband and two daughters. At a point in Wingra Park near Mr. Scott's store they were notified by the witness Bull that the roller was below, and to turn off on Grant street. A little further along, and about 550 feet

west of the railroad crossing, they were met by the witness Herrick, who was the contractor building the road. He knew the roller was coming, and saw it while he was standing there. He told the plaintiff the roller was coming, and that they had better turn to the left, on a street a few rods west of the crossing. The plaintiff proceeded down the road, and at the intersection of the street last mentioned with the one upon which they were driving they were met by the witness Quinlan. He was a city employee, and had been sent ahead to warn travelers of the approach of the roller. He stood in the middle of the road, and motioned to them to turn on the side street, and told them that the roller was on the other side of the track. The driver whipped up his horses and drove on. Connors, the engineer of the roller, saw them coming, put up his hand, and told them to go the other way. He also saw the witnesses Herrick and Quinlan hail the team. The witness Berron was driving a sprinkling wagon, and had stopped in the street immediately in the rear of the roller. He saw both Herrick and Quinlan motion to the driver of the team, and heard Connors call to them. The team was driven along, and, as it approached the roller, shied to one side into a ditch, and the plaintiff was thrown out and injured. As to the warnings mentioned, the plaintiff's testimony is somewhat confused. The witnesses admit seeing the men who attempted to give the warnings, but claim they did not understand them. A view of the situation was taken by the court and jury, and certain profiles of the lay of the land were offered in evidence. The plaintiff and her witnesses claim that they did not see the roller until after they had crossed the railroad track. The proof is undisputed that it was in sight where the witness Herrick stood, over 700 feet from where it stopped; and, considering all the evidence, the conclusion is irresistible that they could have seen it if they had looked as they passed down the road. It was not

unlawful to have the roller in the street.  Having had re-
peated warnings of its presence, and abundant opportunity
to have turned upon the side streets, they assumed the risk
of driving past it.

But counsel for plaintiff are driven to adopt another theory.
They claim the evidence shows that the roller was suddenly
started as the team approached, which frightened the team
and caused the accident.  It is a little significant that this
theory did not creep into the case until after the plaintiff
had been examined as an adverse party.  In her original
complaint she made no claim of this kind.  On her examina-
tion she testified she saw the roller move just as the horses
got scared.  On the trial she said she saw the roller just as
she crossed the railroad track, and that when she first saw
it it was moving slowly.  The evidence of her daughter Julia
is quite inconclusive.  She says she saw the roller in the act
of moving, or at least it was moving slowly.  Another daugh-
ter says the roller was puffing when she first saw it.  She
said: " I heard the puffing, and seen the smoke.  I think I
saw the roller move."  An inspection of her testimony leads
to the conclusion that very little weight can be given thereto.
She was evidently very simple-minded, and became involved
in several contradictions.  This testimony is contradicted
by every other witness, and by every reasonable probability
in the case.  So cogent and potential are the facts, circum-
stances, surroundings, and reasonable probabilities, that we
feel that the court committed no error in declining to submit
the case to the jury.  Cleared of the rubbish, and viewed
in the light of the entire situation, we agree that the evi-
dence falls far short of establishing any actionable liability
on the part of the city.  Such being our conclusion, it be-
comes unnecessary to discuss the rulings upon the admission
of testimony.  None of the rejected testimony had any tend-
ency to relieve the case of the imperfections suggested.

*By the Court.*— The judgment of the circuit court is
affirmed.