SCHOONMAKER, Respondent, vs. KALTENBACH and another, Appellants.

*October 10—November 8, 1940.*

For the appellants there was a brief by *Cavanagh, Stephenson & Mittelstaed* of Kenosha, and oral argument by *R. S. Stephenson.*

*L. E. Vaudreuil* of Kenosha, for the respondent.

WICKHEM, J.   The question in this case is whether the jury's findings with respect to the unsafe character of the stairway in question are sustained by the evidence.   The building in question is of three stories and is occupied by stores, dental offices, and apartments.   Plaintiff was a dentist and had offices on the second floor.   On February 27, 1939, plaintiff, while descending the stairway from the second to the ground floor, fell and sustained the injuries which oc-

casioned this action. He had been working at his office at night, and after closing the office walked down the stairs with his right hand on the right rail of the stairway. He claims to have caught his right heel upon a metal strip which was nailed to the nose of the tread to fasten down a rubber facing with which the stairs were covered. He released his hold on the rail and plunged forward to the bottom of the stairs. As he fell he claims to have reached for something to break the fall but to have found nothing. The stairway may be described as follows: The stairs proceed without any turns from the ground floor to the second floor. Three steps up from the ground floor is a lower landing two and one-half feet deep and three feet wide, the three feet being the width of the stairway. The three steps at the bottom of the stairway have rubber treads and a rubber nosing. The portion of the stairs above the platform is finished with rubber treads fastened down by a brass edging one-half inch wide and fifteen one thousandths of an inch thick. This brass strip is nailed at intervals of about two and one-half inches and extends above the rubber matting one sixteenth of an inch. There are solid, substantial railings on both sides of the stairway from the second floor to the landing near the bottom of the stairs. There is no railing along the three bottom steps. The unsafe features of the stairway as contended for by plaintiff are, (1) the fact that the railing stops at the platform heretofore referred to and does not extend to the full length of the stairway. This is said to account for the fact that plaintiff was unable to prevent his fall or break it by reaching and holding the rail. (2) The use of metal strips to hold down the rubber treads. This is said to be calculated to catch the heel of a person walking down the stairs.

Plaintiff's first contention is that the lack of a railing extending the full length of the stairs was a violation of order

No. 6405 of the safety orders of the industrial commission. This provides in part:

"All stairways and steps of more than three risers shall have at least one handrail. Stairs and steps which are five feet or more in width, or which are open on both sides, shall have a handrail on each side."

We do not deem it necessary to determine whether this contention is sound. We shall assume that it is. It must be held that the absence of a handrail on the lower steps was not a cause of plaintiff's injuries. At the place where plaintiff fell there was a handrail and he was holding on to it. He tripped upon the third step above the platform, and the handrail continued at least down to the platform, a distance of twenty to thirty inches. We can discover nothing in the record to indicate that the absence of a handrail beyond the platform could have had anything to do with preventing his fall or breaking it. In this connection it should be noted that the stairway, being only three and one-half feet wide, was required to have only one handrail although it actually had two. There is no requirement as to the side of the stairs upon which the handrail is to be erected. Assuming that there was a handrail upon the lower platform, it could be on either side, and there is no showing that a single handrail would have avoided this accident. It is pure speculation as to the side on which a handrail would have been put had the lower three steps and platform been finished with a railing, and equally speculative whether such a rail would have contributed anything to the safety of plaintiff. Had plaintiff stumbled upon the platform or the lower three steps a different question might have been presented.

In *Allison v. Wm. Doerflinger Co.* 208 Wis. 206, 209, 242 N. W. 558, stairs ran down the platform with a handrail on each side but none on the platform or the four lower steps from the platform to the floor. Plaintiff testified that

she had her hand on the rail alongside the first series of steps when she fell. This court said:

"On behalf of defendant it is contended that the evidence submitted on the trial failed to result in any issues of fact in those respects, and that the court erred in denying defendant's motions for nonsuit and a directed verdict. That contention is predicated primarily upon some testimony by plaintiff that her fall occurred while she still had her hand on the rail alongside the first series of seventeen steps. If she was correct in that testimony, and began falling while her hand was still on that rail, then the absence of a rail was not the cause of her injury."

In the *Allison Case, supra,* there was testimony apart from that of plaintiff that she had left the portion of the stairs upon which there was a railing before she started to fall, and upon this testimony the verdict in plaintiff's favor was sustained.

In *Brown v. Gaulke,* 194 Wis. 537, 539, 217 N. W. 320, there was no handrail at the point where the fall took place. This court held that even had there been such a handrail, it was purely speculative whether its presence would have helped plaintiff to avoid injury. The court said:

"Under the safety order of the commission a single handrail on either side of the stairway would have complied with the commission's order. Had the handrail been located along the south side of the stairway, it is difficult to see how such rail would have afforded any protection to the plaintiff. The conclusion that it would, would be based upon mere speculation."

It is our conclusion that, assuming a railing to be required for the platform and lower three steps of the stairway, it is purely speculative whether this would have avoided the accident, and the conclusion of the jury that defendants' default caused injury to plaintiff cannot be sustained.

The other question is closer. It seems to be clear that there were no bulges in the metal strips and that they extended

over the rubber matting not more than one sixteenth of an inch, so far as actual measurements are concerned, and one eighth of an inch, so far as estimates in the evidence are concerned. Reliance is had for defendants upon the case of *Erbe v. Maes*, 226 Wis. 484, 277 N. W. 111. There a rubber mat six feet long, two feet nine inches wide, and one third of an inch thick was placed on a tile ramp leading to a store. Plaintiff caught her foot on the end of the mat and fell. This court held that the evidence would not sustain a finding that the place was unsafe. This was principally grounded upon the fact that the thickness of the mat, considered in connection with its use by pedestrians, was so slight as not to constitute a hazard of any consequence. The court also stated that had the mat been thinner, its tendency to buckle would have made it more dangerous, and had it not been put upon the ramp the slipperiness of the tile would have made the location more dangerous. The conclusion was that the place was as safe as it could reasonably have been made. There is an analogy between the *Erbe Case, supra,* and this case, but there are differences which require consideration.

Courts have been hesitant to sustain findings that walking surfaces are unsafe or defective by reason of slight irregularities or projections. The situation is not quite the same with respect to stairways, and a condition which might not be considered a defect upon an ordinary walking surface might conceivably be held to be such upon a stairway, because tripping or stumbling may obviously have more serious consequences because of the absence of a generally flat surface of any extent upon which to regain balance. On the other hand, it is also true that, due to the nature of the operation of climbing or descending stairs, certain irregularities may be of less importance on a stairway than upon a flat surface, the peril of course varying with the location of the irregularity and the use being made of the stairs at any particular time.

We are of the view that a projection of the brass strip one sixteenth of an inch above the rubber mat upon the inside portion of the nosing of the step is too inconsequential to constitute a violation of the safety statute, sec. 101.06. Certain it is that the portion of the strip nearest the nose of the tread was fitted to the nose and did not protrude at all. The strip constituted no possible menace to a person ascending the steps. In view of its location and the slightness of the protuberance, the possibility of peril to one descending the steps is so slight that it is difficult for us to reconstruct this accident and to understand how plaintiff could have caught his heel at all. The strips and treads were well maintained and the stairs had been used for years without accident. It is true that there was expert evidence out of which may be spelled a possible opinion that a continuous rubber tread bent around the nose of the riser and fastened underneath might have been safer, although in another part of his testimony the same expert gave the opinion that these stairs were as safe as they could be made and were just as safe as if the type of tread covering above referred to had been used. The matter is one within common knowledge, however, and our conclusion is that the differences between the type of covering adopted and that suggested are inconsequential. We conclude that this portion of the appeal is ruled by *Heckel v. Standard Gateway Theater,* 229 Wis. 80, 281 N. W. 640.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.