SHUMWAY, Appellant, vs. MILWAUKEE ATHLETIC CLUB, Respondent.

*September 10—October 16, 1945.*

For the appellant there was a brief by *H. A. Sawyer* and *Andrew W. Brunhart,* both of Milwaukee, and oral argument by *Mr. Brunhart.*

*Raymond J. Moore* of Milwaukee, for the respondent.

FOWLER, J.   The appellant first claims that the court after directing retrial of the case should not have granted the motion for a directed verdict and entry of judgment dismissing the complaint.   The claim is without merit.   The situation is not different in its results or the considerations involved from that involved in the common practice of denying a motion for a directed verdict, taking a verdict, and on motion after receipt of the verdict setting it aside and entering judgment for dismissal.   See *Paro v. Carter,* 177 Wis. 121, 129, 188 N. W. 68; *Thoe v. Chicago, M. & St. P. R. Co.* 181 Wis. 456, 465, 467, 195 N. W. 407; *Hay v. Baraboo,* 127 Wis. 1, 105 N. W. 654; *Tomberlin v. Chicago, St. P., M. & O. R. Co.* 211 Wis. 144, 148, 246 N. W. 571, 248 N. W. 121; all cited by the trial judge.   It is not strictly correct to enter a judgment notwithstanding the verdict after receiving the verdict of a jury when the real ground of the judgment is that the verdict is not supported by the evidence, as the trial judge assumed would

be proper, as a motion for judgment notwithstanding the verdict admits the findings of the verdict to be true and the court on such motion grants judgment on grounds other than those decided by the jury. In such a situation the strictly proper practice would be to move to set aside the verdict because it is not supported by the evidence, and grant judgment on the ground that the motion for a directed verdict should have been granted, or if no such motion was made, on the ground that the evidence failed to support a cause of action. *Volland v. McGee,* 236 Wis. 358, 294 N. W. 497, 295 N. W. 635; *Weir v. Caffery, ante,* p. 70, 18 N. W. (2d) 327.

The appellant claims to have sustained injuries from a fall to the floor while using the steam room of the clubhouse owned and constructed and maintained by defendant for the use of its members and guests. The clubhouse is a public building. Sec. 101.01 (12), Stats. In using the steam room the appellant was a frequenter of it. Secs. 101.01 (11) and 101.06, Stats., require the respondent as owner of the clubhouse to construct and maintain the floor of the steam room as free from danger to frequenters as the nature of the place will reasonably permit. The appellant claims that his injuries were sustained as a result of the failure of the respondent to perform this duty. The ground of this claim is that after taking a shower bath the appellant entered the steam room naked to sit a while, which is the way the room is customarily used. When in use live steam enters and fills the room and as it condenses necessarily causes the floor to become wet. The water drains off into two outlets, one at either side of the center of the draining surface. The floor thus becomes slippery to some extent. The appellant claims that because of the smoothness of the tile used in its construction, the degree of the decline of the floor toward the outlets, the want of covering the floor with rubber matting, and the want of proper attention to keep the floor free from soapiness caused by water from the bodies of occupants, the

floor was less safe for his use than it might reasonably have been made in view of the use to which the room was devoted by constructing it with tile with less smooth surface, with less decline, covering it with a mat, and giving it proper attention to keep it free from soapiness. The ultimate question for our decision is, Does the evidence raise a jury issue as to any of these matters?

Appellant also claims that the court should have granted his motion to amend his complaint to include as ground of unsafety a too steep pitch of the floor which was not particularly alleged in the complaint and should have let the case go to trial a second time on the amended complaint. The motion was properly denied because evidence tending to establish that ground was offered on the trial which, though rejected, if received would have failed to establish it. Besides, a liberal construction of the complaint would have permitted submission on the ground of too steep a pitch if the evidence raised such question, as the complaint, while not specifically alleging too steep a pitch of the floor, did name "pitch" among the several things alleged to render the floor unsafe.

The facts, other than above stated, bearing upon the ultimate question for decision may be summarized as follows:

Appellant testified that while he was sitting on the bottom step of a series of steps to the side of the drainage surface a patron entered from the shower room, turned on more steam and stood a short time on the floor of the steam room and soapy water drained from his body and made a soapy spot on the floor. There is no evidence that the respondent or any caretaker was informed of this soapy spot prior to appellant's fall, and the evidence shows that a posted notice warned users of the shower room to remove soap from their bodies before entering the steam room. Appellant further testified that a short time after he noticed this he arose to leave and took a step or two onto this soapy spot, that his feet went forward from under him and he fell backward striking his head on

the edge of the step where he had been sitting, causing the injury complained of.

On the appellant's own statement, the respondent is absolved from want of care to remove the soapy condition of the place where appellant slipped, as respondent did not know of its presence and it had not been in existence long enough to give constructive notice of it. *Kaczmarski v. F. Rosenberg Elevator Co.* 216 Wis. 553, 559, 257 N. W. 598, and cases there cited.

The tile used was an unglazed tile three inches square. While the evidence shows that a tile with a less smooth surface would have made the floor somewhat less slippery, and a smaller tile of like smoothness would have rendered it less slippery because of the cement between the tiles, the evidence is undisputed that tile like that used is in common use in public steam and shower rooms in Milwaukee, and architects testified without dispute that its use was proper construction in bathrooms, shower rooms, and steam rooms. There is also evidence that a rougher tile is used in some bathrooms in the city, but there is evidence that the roughness wears away with use, and that while it remains it affords resting place for bacteria and renders its use less sanitary than use of a smoother tile. As to use of a rubber mat, there is testimony that such mats are used on the floor at the edge of the respondent's swimming pool and at other flat places in the building, and evidence that they are used in bathrooms of private residences, but none that they are used in steam rooms or showers in other public buildings of the city. There is also evidence that use of a rubber mat affords more opportunity for accumulation of bacteria and is therefore less sanitary.

We conclude that the evidence does not raise a jury issue as to use of either a mat or the tile.

The contention relative to a too steep pitch of the floor of the steam room is that a new trial should have been had because of an answer to a question put to a witness, Mr. Neidner.

The answer was that proper practice in the construction of a steam room like the instant one required a pitch of the floor of a quarter of an inch to the foot for drainage. This answer was stricken on the ground that the witness was not competent to testify as an expert. We shall not pass upon whether he was so competent but will assume that he was and that his answer is properly in evidence. The question then is, Did that evidence raise an issue to submit to the jury?

We then have architects testifying that the steam room, including the pitch of the floor of course, was constructed according to proper practice and Mr. Neidner testifying that proper practice required a pitch of a quarter inch to the foot.

That no case for the jury was made is supported by the following consideration: To give the floor of the drainage area a pitch of a quarter of an inch to the foot everywhere would require the area to be circular with an outlet in the center of it. As the water condenses everywhere in the room, the drainage area must cover all parts of the floor, and to secure this result the room would have to be round. This would manifestly be an unreasonable requirement.

That no case for the jury was made also follows from comparing a pitch of a quarter of an inch to the foot with the actual pitch of the instant floor at the place where appellant fell, for that is the only pitch here material because that is the pitch that is claimed to have caused the fall. A scaled map is in evidence showing the drainage area on which appellant fell, and the undisputed evidence is that there is a rise of two inches from the outlet of the area to its edge at the nearest point, and the rise is the same at the edge of the area elsewhere. The map shows the location of the outlet and the place where appellant says he sat. This forms a mathematical basis for determining the pitch at any point on the area. Assuming that when appellant rose to leave the room he went straight for the only door of the room and that he went three feet before he slipped, the pitch of the floor where he fell was two fifths or

eight twentieths of an inch to the foot. He hardly went less than three feet, and if he went farther the pitch was less. A quarter of an inch is five twentieths. No jury should be permitted to find that, a pitch of five twentieths of an inch to the foot being safe under the safe-place statute, a pitch of eight twentieths is unsafe. A difference of three twentieths of an inch is too slight to support a reasonable inference of that effect. To support such an inference the difference must be substantial and great enough to be appreciable to the sight of an ordinary person on inspection.

It follows from the above that no prejudicial error was made by the trial court and the order and judgment appealed from are correct. The respondent claims that they are correct on other grounds also, but as the above rules the case in its favor there is no need to discuss these grounds.

*By the Court.*—The judgment and order of the circuit court are affirmed.