SPOTE, Respondent, vs. ALIOTA, Appellant.*

*March 7—April 12, 1949.*

* Motion for rehearing denied, with $25 costs, on June 7, 1949.

404

For the appellant there was a brief by *Bendinger, Hayes & Kluwin,* attorneys, and *Bernard J. Hankin* of counsel, all of Milwaukee, and oral argument by *Gerald P. Hayes.*

*Harvey E. Kaiser* and *Arlo McKinnon,* both of Milwaukee, for the respondent.

FRITZ, J.   On the trial of the issues under the pleadings there was evidence to the effect that on the evening of November 3, 1943, the plaintiff, Yvonne Spote, fell and sustained personal injuries while bowling on alley No. 1 of defendant's bowling establishment.   The accident occurred when she was advancing toward the foul line of the runway of that alley to

deliver her first ball in the seventh frame of the second game of bowling. She took about five steps with the ball in her right hand and as she got up toward the foul line she slid with her left foot, which suddenly came to an abrupt and violent stop just back of the foul line, went up on her toes, turned around from left to right, and sat down.

Plaintiff introduced considerable evidence to the effect that alley No. 1 was defective because about six inches back of the foul line and three or four inches to the right of the center of the runway two of the one-inch-wide adjacent runway boards were loose and were depressible under the weight of a bowler when stepped on at a certain point, and in such case two nails, which were vertically driven near the front end of said boards, would protrude about one fourth of an inch above such depressed level and would cause the progress of the sliding foot of the bowler to be interfered with and suddenly stopped; that when the foot pressure was released, the depressed boards would spring back to their former level, which was the level of the boards immediately in front (toward the bowling pins) of the loose boards; that such condition rendered the runway unsafe for bowlers and defendant ought to have known of such condition.

On the other hand, defendant introduced considerable evidence to the effect that there was no such defect in the runway as plaintiff's witnesses testified; that it was not rendered unsafe thereby; that the runway was not defective or unsafe in any respect whatever and that defendant, by exercise of reasonable diligence, ought not to have known of such condition.

In view of the irreconcilable conflict in the evidence thus introduced and relied upon by the respective parties, it was primarily within the province of the jury to determine the resulting issues under the evidence. And in relation to the ultimate issues under the evidence, the jury found, (1) that there were loose boards in the flooring of said runway of alley No. 1 which could be depressed under the weight of plain-

tiff's foot as she made her approach to the foul line; (2) that such condition rendered said runway unsafe for the use of bowlers; (3) that by the exercise of reasonable diligence the defendant ought to have known of such condition prior to the time plaintiff's bowling team began bowling on alley No. 1 on the evening in question; (4) that such condition was the efficient cause of plaintiff's accident; and (5) that her damages were $20,000.

In relation to those findings Judge Aarons, in his decision on the motions after verdict, stated, in connection with his discussion of the evidence:

"I am of the opinion that the evidence in the record was adequate to warrant the answers of the jury to the first and second questions as well as the answer to the third question, of the special verdict. As to the fourth question—the evidence strongly supports the finding that the defective condition referred to was the sole cause of plaintiff's injury. . . . There is no evidence in the record showing stumbling or poor footwork on the part of the plaintiff on the occasion in question. . . . Concededly there was no basis in the evidence for a finding of contributory negligence on plaintiff's part. . . . The manner of happening of this 'accident'—and the movement and position of plaintiff's body—is consistent only with the fact that some obstruction upon the flooring of the runway interfered with and abruptly stopped the slide of plaintiff's left foot. . . . The jury was well warranted by the evidence in believing that the defective condition which they found to have existed on November 3, 1943, ought to have been discovered by the defendant by such careful examination of the flooring of the runway as was reasonably required of a bowling-alley operator in view of the great hazard involved in the existence of such defect—a hazard which, if such defect existed, is conceded by defendant's witnesses."

Upon our review of the evidence it is evident that the matters and conclusions thus stated by the learned circuit court judge were fully warranted. There is a clear conflict in the testimony of the witnesses called by the respective parties.

The credibility of the witnesses, whether their memories were reliable and what weight should be given to their testimony after weighing all the other evidence in the case, depended largely upon their manner and demeanor upon the witness stand and were primarily matters for the jury to determine in answering the questions in the special verdict. Likewise those were matters for the trial court to consider and determine in passing upon the motions after verdict, and when, as in this case, the verdict has been approved by the trial court, it will not be disturbed by this court on an appeal. *Suschnick v. Underwriters Casualty Co.* 211 Wis. 474, 248 N. W. 477; *Foreman v. Milwaukee E. R. & L. Co.* 214 Wis. 259, 252 N. W. 588; *Knutson v. Stangl,* 196 Wis. 334, 220 N. W. 375; *Kline v. Little Rapids Pulp Co.* 206 Wis. 464, 468, 240 N. W. 128. Under these circumstances no useful purpose would be served by stating or discussing in detail the conflicting evidence involved in the jury's findings upon which the judgment as to defendant's liability to plaintiff is based.

Defendant contends the jury's assessment of $20,000 as the amount of plaintiff's damages is excessive and should have been reduced by the trial court. The proof in relation to the nature and consequences of the plaintiff's injury on November 3, 1943, consists largely of her testimony and that of Dr. Ansfield, who specialized in bone and joint surgery. No physician was called as a witness by the defendant. Dr. Ansfield testified that he saw the plaintiff for the first time on November 20, 1945, and his last examination of her was on April 21, 1947. His testimony is to the following effect:

Upon falling on the runway, plaintiff suffered a fracture through the neck of the left femur, which separated the bone into two fragments. After a week, in a major operation, a large incision was made in the left hip and a nail driven into the two fragments to effect a union. After two months the fracture had not healed and thereafter she spent most of her time in bed or on crutches. In January, 1945, after five weeks of examination and treatment at Mayo's, in a second operation,

the upper portion of the femur was removed, bone was transplanted on to the remaining shaft to form a new head, muscles were transferred downward along the shaft to give a new pulley action to the hip and the newly transplanted head of the femur was inserted into the old socket. After lying nine weeks in a cast extending from the waist to the left leg and down to the knee of the right leg, the cast became loose and the bones became displaced, and a third operation was necessary; the bones were reset and a new cast applied. She remained at Mayo's until May, 1945, and returned for a recheck in September, 1945, and finally began to use a cane instead of crutches. Her leg commenced to shorten, and she suffered considerable pain and disability which she had theretofore been experiencing in her left hip and knee. She walked with a marked lurch and limp, leaning heavily on her cane, and her left leg was smaller, more knock-kneed and two inches shorter than the right leg and the motions of that leg and knee were substantially restricted and she had a spinal curvature due to her tipped pelvis. Dr. Ansfield's X-ray examination revealed that the operation at Mayo's had not been successful; the socket of the hip joint had been scratched, roughened, and broadened out by the pressure and impact of the reconstructed head of the femur, which had come out of the socket and was riding up along the side of the pelvis where its top, and plaintiff's weight, when she attempted to stand on the leg, was supported only by a "bunch of muscle." Dr. Ansfield estimated her permanent disability then as fifty per cent of the hip as compared to amputation. In April, 1947, he found her symptoms increased; she walked with a greater lurch and a more marked limp; her left hip was considerably more prominent than the right hip; the shortening of the left leg had increased to two and one-half inches; the knock-knee had increased in the left leg; X rays showed that the shaft of the femur was riding higher on the pelvis and was supported only by muscle tissue; the left hip was increasingly unstable for weight bearing and her loss of motion of the left hip and knee remained. Dr. Ansfield estimated her permanent disability had increased to sixty per cent and he felt that further shortening of the left leg would occur as she continued bearing weight on the left leg, and her disability would increase. An X-ray examination on March 18, 1948, showed those conditions were persisting and

the muscle supporting the top of the dislocated femur had become dense and irritated by the pressure of the top end of the left femur. It was his opinion that her permanent disability was sixty per cent and any change would be for the worse; and if it became so much worse as to necessitate an operation to stabilize the hip, the operation, even if successful, would not restore the lost motion of the hip and knee nor restore the shortening, and would at best fail to reduce the permanent disability below fifty per cent. Plaintiff wears shoes with the left sole one and three-fourths inches high, leans heavily on a cane, and walks with a pronounced lurch or limp. She cannot sit straight but must sit in a leaning position and cannot sit long in any one position. She cannot kneel or put on her left shoe and stocking without assistance and suffers continual nervousness and other pain. When injured, her age was thirty-one years.

The undisputed proof as to those facts well warranted the jury's assessment of plaintiff's damages at $20,000. As the trial court stated:

"A study of the testimony of Dr. Ansfield and of the plaintiff, a comparison of the testimony concerning her former physical activities with her present limitations, as well as the observation of the plaintiff's movements and physical condition at the time of the trial, satisfies the court that the amount of the damages awarded by the jury cannot be said to be so excessive as to authorize the court to disturb it."

Defendant contends that under the provisions in sec. 330.19, Stats., and particularly sub. (5) thereof, plaintiff's claim to recover damages on the ground that defendant failed to comply with the requirements of the safe-place statute (secs. 101.01, 101.06, Stats.), had become barred at the time the court, by orders dated December 19, 1945, and January 2, 1946, respectively, granted leave to plaintiff to serve amended complaints on defendant on dates which were beyond the period of two years after plaintiff's injury on November 3, 1943. That contention cannot be sustained. This action to recover damages for her injury on that date was commenced

by the service of the summons and complaint on defendant on November 1, 1945. That date was within the prescribed two-year period during which written notice of claim for damages for injury to a person was required to be served upon the party by whom such damage was caused, under sec. 330.19 (5), Stats.

In the complaint served on November 1, 1943, plaintiff alleged as grounds for recovery that,—

A portion of liquid refreshment and foreign substances were negligently spilled and allowed to remain on the runway and that her injuries *were caused by defendant's failure to properly maintain the runway "so that the same would be safe for his customers"* and that by reason of such negligence of defendant, the plaintiff sustained her injury.

In plaintiff's first amended complaint she alleged as the grounds for recovery that,—

While bowling on November 3, 1945, her left foot was suddenly and violently halted causing her body to twist and forcibly throwing her to the floor; that her left foot came into contact with a loose and defective board on said runway; and the resultant downward pressure caused by her weight on said board, exposed several nails on the forward portion of said board; that by reason of the foregoing, defendant's premises were *"not as safe . . . and defendant failed to adopt and use proper maintenance methods to make such . . . runway . . . as safe* as the nature of the premises would reasonably permit."

Those allegations as to the unsafe condition of defendant's premises which caused her to fall were restated substantially in plaintiff's second amended complaint.

In relation to the notice of injury required by sec. 330.19 (5), Stats., it is provided therein that,—

". . . No such notice shall be deemed *insufficient or invalid* solely *because of any inaccuracy or failure therein in stating* the description of the injuries, the manner in which they were received or *the grounds on which the claim is made,* provided it shall appear that there was no intention on the part of the

person giving the notice to mislead the other party and that such party was not in fact misled thereby. . . ."

The facts and circumstances stated in affidavits filed in connection with plaintiff's application for leave to file the amended complaints warranted the court in holding that the plaintiff did not intend to mislead defendant and that he was not in fact misled by her allegations in the first complaint that her injuries were caused by defendant's negligence. As in connection therewith she then alleged also that defendant failed to properly maintain the runway "so that the same would be safe for his customers," etc., the inaccuracy or failure in not stating more fully the grounds upon which her claim was based did not render insufficient or invalid the notice of injury and claim for damages, which was given to the defendant by her first complaint within the two-year period after her injury on November 3, 1943; and as the notice given thereby was in other respects required by sec. 330.19 (5), Stats., sufficient to constitute compliance with that statute, her action to recover damages for the injury in question had not become barred thereby in view of the liberal interpretation which, in view of the provisions in the statute itself, was evidently intended to be given to such notice.

Defendant contends that during plaintiff's rebuttal after defendant rested, the court erred in overruling defendant's objection to the court permitting plaintiff to call and have Mabel Barnekow testify to the following effect,—

That on November 3, 1943, and also in the middle of October, 1943, she bowled on alley No. 1, and then observed the looseness of boards in the runway; that when she would slide the boards would go down and that when her weight was off of the boards, they would go up again level with the others; and that on November 3, 1943, she observed the condition while bowling on the first shift on alley No. 1 and after November 3, 1943, she again saw that condition and saw the defect where the boards would depress.

Plaintiff claims that Mrs. Barnekow's testimony was permissible on rebuttal because Walter Mielordt,—as a witness called by defendant,—had testified that in working for defendant during the night of November 3, 1943, he looked for flaws or marks or something in alley No. 1, but did not find anything or any loose board or any depressing under his weight.

Although the usual rule will exclude on rebuttal evidence,—which has not been made necessary by defendant's case in reply (4 Wigmore, Evidence (2d ed.), p. 20, sec. 1873),—whether the plaintiff should be permitted to reopen his case after defendant has introduced his testimony, is generally considered to rest in the sound discretion of the court. *Brockman v. Wisconsin P. & L. Co.* 197 Wis. 374, 380; 222 N. W. 239; *McGowan v. Chicago & N. W. R. Co.* 91 Wis. 147, 153, 64 N. W. 891.

As was stated in the *McGowan Case* (p. 153) :

"The plaintiff or party holding the affirmative must try his case out when he commences, and is bound to introduce all of the evidence on his side, except that which operates merely to answer, avoid, or qualify the case as made out by his adversary's proof. At this alone the evidence in reply must be directed, but for sufficient reasons it may be found advisable to depart from the rule in order to attain complete justice. When this ought to be done must be left to the sound discretion of the court, and in general its action in this respect cannot be assigned as error."

It is also contended by defendant that the court erred in not granting a new trial on the basis of newly discovered evidence, and because of an improper remark in the presence of the jury by one of plaintiff's witnesses and also by one of her attorneys. Defendant claims the effects of these remarks were not remedied by the court instructing the jury to disregard them. However, none of those matters and the court's ruling in relation thereto can be considered so prejudicial as to entitle the defendant to a new trial.

*By the Court.*—Judgment affirmed.