THONI, Appellant, vs. BANCROFT DAIRY COMPANY, Respondent.

*October 10—November 15, 1949.*

578

*Hugh F. Oldenburg* of Madison, for the appellant.

For the respondent there was a brief by *Wilkie, Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *Oscar T. Toebaas*.

MARTIN, J. The main question for our determination is whether, under all the evidence, the court should have submitted the case to the jury. When the defendant made the motion to direct a verdict, the question presented to the trial court was one of mixed law and fact. It became his duty to weigh and consider the testimony in the case, and to apply to it those rules of law which are deemed controlling in cases of this kind.

In *Smith v. Pabst* (1940), 233 Wis. 489, 491, 288 N. W. 780, a fourteen-year-old girl was injured in a fall from a saddle horse and at the conclusion of the evidence, the court directed a verdict on defendant's motion, and on review it was stated:

"It is well settled that it is the duty of a trial court in a proper case to grant a nonsuit or to direct a verdict, and that when a verdict is directed the question on appeal is whether the trial court was clearly wrong. *Leckwe v. Ritter,* 207 Wis. 333, 241 N. W. 339, and numerous cases cited therein. In a recent case, *Rusch v. Sentinel-News Co.* 212 Wis. 530, 533, 250 N. W. 405, it was said:

"'A verdict may properly be directed only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion.'"

See also *Maanum v. Madison* (1899), 104 Wis. 272, 273, 274, 80 N. W. 591; *Chybowski v. Bucyrus Co.* (1906), 127 Wis. 332, 340, 106 N. W. 833; and *Szczepanski v. Chicago & N. W. R. Co.* (1911), 147 Wis. 180, 183, 132 N. W. 989.

The trial court concluded in the present case that there was no evidence to go to the jury that there was a violation of the safe-place statute, sec. 101.06.

Plaintiff's first contention is that the floor contained a defect in the nature of a "bulge" upon which plaintiff slipped and fell. Andrew Dahlen, Dane county surveyor and plaintiff's witness, used a carpenter's level, twenty-four inches long, slid it over the floor and used a light on the other side of the level. If he could see a light under the level he would take a measurement. He testified on direct examination:

"We have taken elevations at the different corners of the squares that we mentioned. At the sixth square starting from the easterly wall of closet 1, we find a line of depression, or, in other words, there is a slight depression at the edge of a series of these squares, and that continues from the south wall, or at the line of doorways, and extends north to a column that supports the roof. We have used the normal elevation of the floor as zero and along this line we have a depression of one one-hundredth of a foot. That starts—that works both ways from this line. In other words, if the lowest point is one tenth, it tapers up to zero at the west of the line and also tapers toward zero at the east of the line. Then those squares further west, we have a bulge or elevation which we have indicated on the map by broken lines. The highest point of that bulge is, roughly—the highest point of that bulge is two one-hundredths of a foot above the normal elevation of the floor."

This testimony shows that in the sixty-three-inch by eighty-one-inch area examined by witness that there were variations from zero to one one-hundredth of a foot and that what he called the "bulge" was approximately two one-hundredths of a foot. The chart prepared by this witness shows a gradual unevenness throughout this small area. The architect and

building contractor testified that such unevenness was unavoidable in laying a concrete floor.

In *Schoonmaker v. Kaltenbach* (1940), 236 Wis. 138, 143, 144, 294 N. W. 794, the plaintiff in walking down a stairway fell and was injured. His claim for recovery was based on lack of proper railing and also upon upward projection of the metal strip covering the rubber matting. This court said:

"Courts have been hesitant to sustain findings that walking surfaces are unsafe or defective by reason of slight irregularities or projections. . . .

"We are of the view that a projection of the brass strip one sixteenth of an inch above the rubber mat upon the inside portion of the nosing of the step is too inconsequential to constitute a violation of the safety statute, sec. 101.06."

In *Erbe v. Maes* (1938), 226 Wis. 484, 277 N. W. 111, an action was brought against a storekeeper for injuries sustained by a customer when she caught her foot on the end of a rubber mat at the entrance to the store, and fell. It was held that the evidence was insufficient to raise a jury question as to the storekeeper's liability either on the theory of negligence or of violation of the safe-place statute, where the rubber mat, placed at the slightly sloping tile entrance to prevent slipperiness, was in good condition and repair and extending only one third of an inch above the surface of the tile.

See also *Shumway v. Milwaukee Athletic Club* (1945), 247 Wis. 393, 20 N. W. (2d) 123.

These cases support the trial court's order granting a directed verdict here.

*Spote v. Aliota* (1949), 254 Wis. 403, 37 N. W. (2d) 31, cited by appellant, is distinguishable for in that case the plaintiff introduced considerable evidence to the effect that two of the narrow boards on a certain bowling-alley runway were depressible under the weight of a bowler and in such case two nails would protrude approximately one fourth of an inch and would cause the progress of the sliding foot of the bowler to be

abruptly interfered with. On the other hand, defendant introduced considerable evidence to the effect that there was no such defect in the runway. Because of the irreconcilable conflict in the evidence introduced and relied upon by the respective parties, it was primarily within the province of the jury to determine the resulting issues under the evidence.

In the instant case none of the officers or employees of the defendant had noticed this slight general unevenness in the floor prior to the time that the plaintiff fell. It is significant that in examining the floor a twenty-four-inch level and a light were used by plaintiff's witness to aid in discovering this small unevenness. The most that plaintiff claims is that the alleged bulge was a little less than one fourth of an inch above the normal level. Plaintiff makes no claim that there was any abrupt rise in the floor that would catch her toe or heel and cause her to stumble. There is no evidence to prove that the floor did not comply with the building code, nor that it was reasonably possible to make the concrete floor more level.

We have carefully considered all the evidence and conclude that there was no issue to submit to a jury on whether or not the concrete floor was as free from danger as the nature of the employment or the public building would reasonably permit.

It was held in *Heckel v. Standard Gateway Theater* (1938), 229 Wis. 80, 281 N. W. 640, that the safe-place statute does not require the owner of premises resorted to by the public to do the impossible or the unreasonable in maintaining the premises in a safe condition; and, also, the mere fact that an accident happens does not prove that the place was not safe. The injury sustained must be caused by something great enough to be appreciable to the sight of an ordinary person.

Plaintiff's next contention is that the asphalt-tile floor covering contained an excessive accumulation of wax and was unnecessarily slippery.

Asphalt tile is standard equipment in many public buildings. The industrial commission approved the specifications for this particular floor covering. Plaintiff's claim that other tile

ought to have been used that was less smooth does not create any liability against the defendant. See *Shumway v. Milwaukee Athletic Club, supra.*

Plaintiff relies on testimony of her witness, a salesman employed by a local department store, that asphalt tile should be waxed only twice a year and should not be polished. This witness did not see the floor the day of the accident and the testimony was given without regard to frequency of use. There was no evidence offered by the plaintiff that there was an excessive accumulation of wax or that the floor in that particular spot was unnecessarily or unusually slippery.

Plaintiff's final contention is that the area was not sufficiently light because of the placement of file cases and the color of the floor.

The evidence shows that there were three large windows, ten feet eight inches wide, in the office, and one of these was in the west wall with no buildings opposite to shut off light through the west window. It was a bright afternoon and sunlight would obviously come in through the west window. The filing cabinets were approximately forty-two inches high and were located six feet from the south wall. There was a space between the end of the filing cases and the west wall of three feet eight inches. The total length of the cabinets was eight feet four inches. These cabinets in this large room (seventy-three feet by forty-five feet eleven inches) could not obstruct the light from coming into the entire office and passageway in front of the rest rooms.

There was no credible evidence to submit to a jury whether or not the defendant had violated the duty it owed to the plaintiff in furnishing proper lighting in the passageway between the filing cabinets and the rest rooms.

Under the established law, the verdict was properly directed in favor of the defendant.

*By the Court.*—Judgment affirmed.

BROWN, J., took no part.