Georgia CRONIN, (Plaintiff) Appellant,

v.

NORTHLAND BOWLING LANES COMPANY, a Corporation, (Defendant) Respondent.

No. 31734.

St. Louis Court of Appeals.

Missouri.

April 20, 1965.

William R. Kirby, St. Louis, for appellant.

William K. Stanard, II, St. Louis, Carter, Bull, Baer, Presberg, Lee & Stanard, St. Louis, of counsel, for respondent.

WOLFE, Judge.

This is an action for damages arising out of personal injuries alleged to have been sustained by the plaintiff when she fell in defendant's bowling alley while bowling. A jury returned a verdict for the defendant, and from the judgment on the verdict the plaintiff prosecutes this appeal.

The plaintiff was a member of a bowling league which bowled on Friday nights at the Northland Bowling Lanes, owned and operated by the defendant. Her league started bowling at 6:45 p. m., but on April 15, 1960, the date of the occurrence here considered, the plaintiff did not arrive at the alleys until 7:00 p. m. Two alleys had been reserved for the league, and on this night they were alleys No. 17 and No. 18. The other members of the league who had arrived on time had started bowling at 6:45.

The plaintiff was 33 years of age at the time, and had been bowling for twelve or thirteen years. She testified that when she arrived her team was in the "third frame", and she was allowed to play until she caught up so she would be bowling in the same frame as the others. She had her own bowling shoes and her own ball. She started bowling on alley 17 and experienced no difficulty. She then moved to alley 18. She stated that she had a four-step approach in the delivery of the bowing ball, and that on the last step she would slide with her left foot for a distance of about

one and a half or two feet. She said that when she made her first approach on alley 18 and started her slide, her left foot stuck and she fell forward.

As she fell she released the ball, and fell to her hands and knees. She got up and went back to the bench, and then returned to the place where she had fallen to examine the alley. She said that she could not see anything on it, but that when she knelt down and felt the area she could feel a clear, sticky substance that blended with the floor. She said that when she fell she experienced a jarring in her hands and knees and back. She stated that she reported her fall to a man named Frank at the desk.

Three of her teammates were called as witnesses by the plaintiff. One named Esther Woodworth testified that both alleys 17 and 18 were very sticky. She said that everybody was falling down. She was asked if there was any foreign substance on the alleys, and she answered, "It wouldn't be nothing, the alleys were just sticky. I do not know whether it's humidity or what it was but they were sticky where you couldn't slide at all." She said there were quite a few evenings like that.

Another member of the team testified that she noticed the alleys were sticky as soon as they started to bowl. She said that she noticed this condition before in other alleys, and added, "But usually they will clean the alley when you tell them about it." She said that she talked to a boy at the desk about it but said nothing to the plaintiff before the plaintiff started to bowl.

The third member of the team to testify stated that this stickiness was widespread on both 17 and 18. She said that she reported the condition to Mr. Bass, the manager, before the plaintiff arrived, and asked him to do something about it. She said that after the plaintiff fell, "they came and wiped the alley off and gave them some talcum to use on their shoes."

The plaintiff continued to bowl the remainder of the evening, but claimed to have jarred her back and hurt her hands and knees when she fell. But no point is raised relating to the injuries alleged to have been sustained.

The defendant called a Mr. McClaren to the stand. He testified that he was manager of the bowling lanes at the time in question. He said that a maintenance man was employed who cleaned the alleys with a duster and then buffed the lanes and cleaned off the approaches. He worked from 1:30 a. m. to 9:00 a. m. Two hours later in the morning a porter would drag the lane approaches with a duster, and then at 3:00 p. m. and again between 5:30 and 6:00 p. m., and between league plays at 9:30. The porter carried steel wool with him to remove any foreign substance, such as crushed crayon or rubber marks made by the heels of shoes.

On the evening in question two men were on duty. One was Frank Bass, the assistant manager who worked from 5:30 until 2:00 a. m. His duties were to maintain and clean the establishment, to serve customers, and to see that the leagues started on time. On duty with him was a man named James Blubaugh. His job was to take care of the public by giving out rented shoes or to help them in bowling, scoring, or any other like matter. He had the duty to keep the approaches clean if they had any substance on them.

The manager testified that on April 15, 1960, during the time in question, he was not approached by any of the ladies with complaint that one or both of the approaches in alleys 17 and 18 were in an unsatisfactory condition. He was informed later that the plaintiff had fallen on alley 18. He went to the alley and looked at it very carefully, and felt it with his hand. He examined it and had there been any colorless or sticky foreign substance, he would have been able to detect it. But he saw nothing. When he went to the alley, the plaintiff was in the area, and she made no

statement as to what caused her to fall. James Blubaugh had no recollection of any one complaining about the alley being sticky. The manager, who had no personal knowledge of the incident, stated that sometimes air-conditioning would have an effect upon the lanes, and if they noticed it, it would be immediately corrected.

As stated, there was a verdict and judgment for the defendant. The plaintiff-appellant raises but two points, and both have to do with instructions given.

The first assignment of error goes to a verdict-directing instruction offered by the defendant and given by the court and designated as Instruction No. 4, which was as follows:

"You are instructed that even though you may find and believe that there was some sticky substance on the floor of defendant's premises that caused plaintiff to fall, the defendant would not be liable on that account, unless you further find from the preponderance of the evidence that such sticky substance had been on the floor for a sufficient length of time for the defendant, in the exercise of ordinary care, to have discovered it, and, thereafter to have removed it, or to have warned plaintiff of its presence.

"In this connection, you are further instructed that if the condition of the floor was open and obvious, and that plaintiff and defendant had an equal opportunity to know of said condition, then plaintiff is not entitled to recover and your verdict should be for the defendant Northland Bowling Lanes Company."

It is first contended that the instruction is erroneous because of the phrase, "unless you further find from the preponderance of the evidence that such sticky substance had been on the floor for a sufficient length of time for the defendant, in the exercise of ordinary care, to have discovered it,

and, thereafter to have removed it, or to have warned the plaintiff of its presence."

■ The complaint against this is that it eliminates actual knowledge by the defendant from the jury's consideration, and if the defendant knew of a sticky substance on the alley, it would not be liable under such instruction. There is no evidence or contention that the substance was placed there by the defendant. Neither can it be logically said that the defendant company can discover that which it knew. Therefore, the instruction indirectly negates actual knowledge.

■■ The instructions must all be considered together. The plaintiff's main verdict-directing instruction predicated liability on the defendant if it " * * * knew or by the exercise of ordinary care would have known of the presence of such sticky substance on the approach of said lanes. * * *" We do not believe that the jury would be in any way confused by the phraseology of Instruction No. 4. It was defendant's contention that its employees had never been informed by the plaintiff or others that the alley was sticky. The defendant was entitled to an instruction on the facts favorable to it and the law under those facts. Wilson v. Miss Hulling's Cafeterias, Inc., 360 Mo. 559, 229 S.W.2d 556; Perry v. City of St. Louis, Mo.App., 344 S.W.2d 661.

Complaint is also leveled at another paragraph: "In this connection, you are further instructed that if the condition of the floor was open and obvious, and that plaintiff and defendant had an equal opportunity to know of said condition, then plaintiff is not entitled to recover and your verdict should be for the defendant Northland Bowling Lanes Company."

■ It is contended that for the plaintiff to have had an equal "opportunity" she would have had to have an equal "duty" This appears to us to be a non sequitur as it is applied to the facts before us. We

are cited to a number of cases which are merely restatements of the general principles of law as they apply to the facts in each case. All of the Missouri cases cited are distinguishable upon the facts. But the plaintiff seems to rely chiefly upon Davanti v. Hummell, 409 Pa. 28, 185 A.2d 554. That case involved some visible wax upon the floor about the size of a silver dollar, and the court stated in that opinion: "* * * there would be a duty on the part of a bowling alley owner to make certain that the runway is smooth and clear of obstruction just before a bowling game is to begin * * *." To compel one to make certain of safety is not our law, nor do we believe it to be the law of Pennsylvania, for in the same opinion the writer states: "Charging the owner of premises with constructive notice of something he cannot see would obviously be unfair and unjust, but there is no contention in the case at bar that the object which caused the plaintiff to fall was invisible."

In the case before us plaintiff herself stated that the sticky spot of which she complained was invisible. Her witnesses testified that both alley 17 and alley 18 were sticky, and the plaintiff herself bowled on 17 before her fall on alley 18.

We are also cited to Burns v. Goldammer, 38 Ill.App.2d 83, 186 N.E.2d 97, where there was a wad of gum on the approach. The court held that a submissible case was made. The third case was Spote v. Aliota, 254 Wis. 403, 37 N.W.2d 31. This case had to do with loose boards on the approach which caused nails to project upward for a quarter of an inch when the boards were stepped upon. There the court held a jury case was made.

None of these cases appear to have gone beyond the reasonable care required of the operator of the alley. We cannot go beyond that here, and the plaintiff cannot contend for any higher degree of care than that which she instructed upon. The same instruction as the one under consideration was held by this court to be proper in Hewitt v. Katz Drug Co., Mo. App., 199 S.W.2d 872. It was approved by the Supreme Court in Smith v. Alaskan Fur Company, Mo., 325 S.W.2d 740.

█ We hold that the giving of the instruction was not prejudicial, and the point raised is without merit.

The next point asserted relates to the burden of proof instruction. It should be stated that this case was tried before January 1, 1965, the date when the use of Missouri-approved jury instructions became mandatory. In cases tried after that date, the only burden of proof instruction that may be used is 3.01 M.A.I., except "in those rare cases where the proof must be clear, cogent and convincing."

We therefore consider the instruction before us under the law at the time it was given.

The instruction is as follows:

"You are instructed that under the law of this case, the defendant was not an insurer of plaintiff's safety while in its establishment but, on the contrary, the burden is upon the plaintiff to prove by the preponderance or greater weight of all the credible evidence that she fell and was injured as a direct and proximate result of negligence on the part of the defendant in the manner and particulars set out in other instructions given to you. Unless you find and believe that the evidence preponderates in favor of the plaintiff on the issue of negligence, your verdict should be for the defendant Northland Bowling Lanes Company.

"By the term 'preponderance or the greater weght of all the credible evidence', as that term is used in these instructions, is meant such evidence as you may believe to be more worthy of belief than that which is offered in opposition thereto."

Complaint is leveled at the phrase, "You are instructed under the law of this case, the defendant was not an insurer of plaintiff's safety * * *." That is the law as stated in Harbourn v. Katz Drug Company, 318 S.W.2d 226, l.c. 229; Main v. Lehman, 294 Mo. 579, 243 S.W. 91, l.c. 93. But plaintiff states that the mere fact that a statement is found in the opinion of the Appellate Court does not authorize its inclusion in an instruction. With this we are in full accord, and so held in Anderson v. Glascock, 271 S.W.2d 243, l.c. 248. However, it is also true that it is not necessarily error to give a correct statement of law, somewhat abstract in nature, unless it is confusing and misleading and therefore prejudicial. Detrick v. Mercantile Trust Company, Mo.Sup., 292 S.W.2d 300. The phrase here as used was cautionary in effect. The only logical meaning the jury could draw from it was that the defendant was not liable for the injuries suffered by the plaintiff because of her fall unless defendant's negligence caused the fall.

In Morris v. E. I. DuPont de Nemours & Co., 351 Mo. 479, 173 S.W.2d 39, the rule is set out as to cautionary instructions, and states l. c. 42: "Unless they state an incorrect or inapplicable rule of law, or unless there appears to have been an abuse of discretion by the trial court, appellate courts do not order reversals because of them except under most unusual circumstances."

We do not believe the court could be held to have abused its discretion by including the phrase above quoted.

The criticisms which the plaintiff raises as to the rest of the instruction are those frequently made by the courts concerning burden of proof instruction. We are cited to no cases holding an instruction such as the above erroneous, nor do we find it to be so. It was objections such as raised here which brought about the adoption of instruction 3.01, M.A.I.

As we previously stated, we are obliged to decide this case upon the law as it existed at the time the case was tried, and nothing we have said herein relates to the instructions now required to be given.

For the reasons set out above, we affirm the judgment of the Circuit Court.

RUDDY, P. J., and ANDERSON, J., concur.