BALAS and husband, Appellants, v. ST. SEBASTIAN'S CONGREGATION, Respondent.

*No. 185. Submitted under sec. (Rule) 251.54 December 2, 1974. —Decided February 4, 1975.*
(Also reported in 225 N. W. 2d 428.)

---

[29] *Id.* at page 123.

The cause was submitted for the appellants on the briefs of *Kersten & McKinnon,* attorneys, and *Charles D. Clausen* and *George P. Kersten,* of counsel, all of Milwaukee; and for the respondent on the brief of *Carl F. Schetter* of Milwaukee.

WILKIE, C. J.    This is an action for personal injuries suffered by plaintiff Ann Balas because of the alleged negligence of the defendant congregation. The case was submitted to a jury on a special verdict inquiring whether the defendant, as the owner of a public building, failed to construct the premises so as to be as safe as its nature would reasonably permit. By its verdict the jury found both parties causally negligent, and apportioned the negligence 30 percent to plaintiff and 70 percent to defendant. The trial court set the verdict aside and granted defendant's motion for a directed verdict.

The two issues presented in this case are whether the trial court erred in setting aside the verdict and whether the court erred in refusing to submit a question on the negligence of the defendant under the common-law standard of care owed by an owner to an invitee, as well as the safe-place standard.

We conclude that the evidence, viewed most favorably to the plaintiff, shows a violation of neither statutory safe-place [1] nor common-law invitor-invitee duty by the defendant.

Plaintiff, a member of St. Sebastian's Congregation, was a volunteer worker at the monthly congregation fish fry. Her job was to operate a bread-slicing machine which was mounted on casters. The machine was also used in the parish school lunch program. Another member of the congregation, who was also a volunteer worker in the fish-fry program, testified that he had cleaned

[1] *See:* Sec. 101.11, Stats.

the machine by moving it from the school kitchen, pushing it down a hallway and ramp to a service entrance area, and blowing the bread crumbs out of the slicing mechanism with an air hose which was located there. He told plaintiff about this method of cleaning the machine and suggested that she follow the same practice. Thereafter, on approximately 52 different occasions she wheeled the machine down the ramp to the air hose, blew the bread crumbs out, and wheeled the machine back up the ramp through the hallway and into the kitchen without incident. The air hose was not used to clean the machine by anyone except plaintiff and her predecessor in the fish-fry program. After the machine was used in the school lunch program, it was cleaned by brushing out the crumbs which remained in it.

On October 5, 1967, plaintiff followed her usual routine of slicing the bread and pushing the bread-slicing machine to the service area, where she cleaned it with the air hose. As she pushed the machine back toward the kitchen, the casters stuck in a construction joint located at the bottom of the ramp, and the slicer began to slide off its base. She felt the machine going forward and tried to save it from tumbling. It fell, breaking her leg above the ankle. The fracture ultimately resulted in a knee injury.

Plaintiff was unaware the machine was top-heavy. She had never had any trouble pushing the machine up or down the ramp on the previous times when she used the air hose to clean the machine. The congregation member who told her about the air hose testified that once when he was pushing it "broadside" and the machine tilted at the bottom of the ramp, he grabbed the slicing mechanism and caught it. He told no one about this incident. The school janitor testified that he realized the machine was top-heavy, a fact which had never occurred to other employees working in the kitchen in the school lunch

program, because they only moved the machine from place to place in the kitchen.

Four expert witnesses testified for the defendant, to the effect that the construction joint at the bottom of the ramp was a normal construction practice and that the variance in elevation between the sides of the joint, which was approximately one-eighth inch, was within normal construction tolerances. Each expert was questioned on cross-examination as to alternative methods of construction which might eliminate a construction joint, and methods of covering up such a joint when it was created. Every method of eliminating or covering up the joint suggested by plaintiffs' counsel had drawbacks, in the opinions of the witnesses.

The jury verdict here was correctly set aside by the trial court because as a matter of law the premises were, as that court declared, as safe as their nature would reasonably permit. The obstacle presented by the joint was too slight to constitute a violation of the safe-place statute. A number of Wisconsin cases have held that a slight irregularity in the surface of a floor or stair caused by construction of the surface does not constitute a violation of the safe-place statute. Of these, *Shumway v. Milwaukee Athletic Club* (1945), 247 Wis. 393, 20 N. W. 2d 123, is the closest to the instant case. In *Shumway* the plaintiff slipped and fell on the pitched floor of a steam room. The tile laid to form the surface of the floor was unglazed and three inches square. The evidence showed that tile with a rougher surface would have made the floor less slippery, and that smaller tile with the same surface smoothness would also have resulted in a less slippery floor because of the greater area of cement between the tiles. This court, affirming a directed verdict for defendant, held that because the evidence was undisputed that like tile was in common use in public steam and shower rooms in Milwaukee and architects testified

without dispute that its use was proper construction in bathrooms, shower rooms, and steam rooms, there was no jury issue as to whether the place was as safe as its nature would reasonably permit.

Plaintiff relies on *Spote v. Aliota* (1949), 254 Wis. 403, 37 N. W. 2d 31, in which two adjacent runway boards in a bowling alley were loose and were secured by two nails driven vertically near the front end of each board. The nails protruded about a quarter of an inch above the boards when they were depressed. This condition interfered with the sliding foot of a bowler approaching the foul line. We held that this condition rendered the runway unsafe for bowlers and sustained the judgment in favor of a bowler who fell as she approached the foul line.

*Shumway* stands for the proposition that the duty to construct a public building as safe as its nature will reasonably permit is satisfied by a showing that the building is constructed in accordance with accepted practices, even though some other practice might have rendered the building more safe. This is a recognition that construction involves the balancing of many considerations.[2] *Spote* is distinguishable, because there was no question that the nails, if they protruded, constituted a hazard.

At common law, the highest duty owed by an owner of land toward someone on the premises was that of ordinary care, owed to an invitee.[3] This duty could be satisfied by alternative means. The landowner might either have his premises in a reasonably safe condition or give the invitee adequate and timely warning of latent

---

[2] An exception is where such general usage is inherently dangerous or obviously improper. *Patterson v. Silverdale Resort* (1959), 8 Wis. 2d 572, 99 N. W. 2d 730.

[3] *Carr v. Amusement, Inc.* (1970), 47 Wis. 2d 368, 177 N. W. 2d 388.

and concealed perils which are known to the invitor but not to the invitee.[4] Another way of stating this same proposition is that there is no duty to inspect and warn unless it is shown that the premises were not in a reasonably safe condition. The statutory safe-place duty to construct and maintain a public building as safe as its nature will reasonably permit is not a lesser standard than that imposed by the common law.[5] *A fortiori* no violation of a common-law duty is shown if violation of the safe-place statute cannot be established.

Plaintiff argues that defendant breached its common-law duty of ordinary care by failing to warn her that the machine was top-heavy. However, the evidence shows that the top-heavy machine presented a danger only when it was wheeled into the delivery area to clean it with the air hose. Moreover, she had cleaned the machine in the delivery area at least 52 times prior to the accident. Her opportunity to observe and to discover any danger was greater than the opportunity of any employee of the defendant. If the danger here was discoverable in the exercise of ordinary care, plaintiff was at least as negligent for her own safety as the defendant was in failing to warn her of the condition.[6]

*By the Court.*—Judgment affirmed.

[4] *Schlicht v. Thesing* (1964), 25 Wis. 2d 436, 130 N. W. 2d 763.

[5] *Rosholt v. Worden-Allen Co.* (1913), 155 Wis. 168, 144 N. W. 650.

[6] The comparative-negligence law applicable to this case bars recovery unless the defendant's negligence was greater than that of the plaintiff. *Holzem v. Mueller* (1972), 54 Wis. 2d 388, 195 N. W. 2d 635.