PATTERSON and another, Respondents, v. SILVERDALE
RESORT, INC., Appellant.

*November 5—December 1, 1959.*

For the appellant there was a brief by *Rogers & Owens* of Portage, and *Conway & Conway* of Baraboo, and oral argument by *Bruce J. Rogers.*

For the respondents there was a brief by *Langer & Cross* of Baraboo, and oral argument by *Clyde C. Cross.*

MARTIN, C. J. In the afternoon of July 15, 1957, Mr. and Mrs. Patterson and their two children, Karen and Steve, obtained and paid for accommodations at the defendant resort near Baraboo. The accommodations consisted of a room, commonly known as Room 1, situated in the northwest corner of a building which housed the office, and a sleeping cabin known as the "Shanty," situated some distance to the west and north. The room was to be occupied by Mrs. Patterson and her daughter; the "Shanty" by Mr. Patterson and the son.

Immediately north and west of Room 1 there is a lawn area covered with grass and containing a number of trees, which area is surrounded by a retaining wall. The wall is constructed of quartzite stones in various sizes and natural shapes, laid up without mortar. According to the plat of the area, which is Exhibit 1 in evidence, the wall is about 20 feet long on the north and 35 feet long on the west. Along the north portion its height varies between three and four feet. The north wall extends east to a workshop building opening on the lower level. The area west and north of the retaining wall is semigrass with a driveway located therein.

Prior to taking the accommodations Mrs. Patterson inspected them. After registering, the family moved their luggage into their respective rooms. Mrs. Patterson testified they spent about twenty minutes there; it was daylight and she noticed the lawn area and the retaining wall, although she did not go into the immediate vicinity of the wall. The family then left to visit friends at another resort nearby and did not return until 11 or 11:30 that night.

After reaching her room Mrs. Patterson decided she wanted something from the car, which was parked in an area between the room and the "Shanty." Her daughter said that Steve was outside in the driveway and Mrs. Patterson went out to call him. She walked about 25 feet from the door of the room to the north wall, which she knew was

there, saw her son on the lower level close to the wall, and while she talked to him she stood either close to or partly upon the stones at the top of the wall. While so standing the wall collapsed and she fell with it, sustaining injury to her right leg.

The son Steve, aged sixteen, testified that when he heard his mother call he was on the lower ground north of the wall and he went up to two or three feet from the foot of the wall. From that position he saw her approach the wall and he testified her feet were on the grass next to the stones; she had stopped before the collapse occurred.

Mrs. Patterson testified it was dark in the area of the wall at the time of the accident, though she knew the wall was there and she could make out the position of her son because she could see his white shirt. There were lights burning in Room 1 about 25 feet south of where she stood at the wall. The record shows that there is a power pole and a light fixture at the northwest corner of the wall. The fixture is a triple fixture but contained only one 60-watt bulb without reflector. The manager of the resort checked the light at 10:30 that evening and it was burning. At the time of the accident, however, the bulb had burned out.

The jury found that the retaining wall, as constructed and maintained on the date of the accident, constituted a hazard; that in the exercise of ordinary care the defendant, through its agents or officers, should have known of the hazard and was negligent in failing to warn its guests thereof; that the hazardous condition of the wall and defendant's failure to warn were causes of Mrs. Patterson's fall and injury. It found that Mrs. Patterson was not negligent as to her own safety.

Defendant contends Mrs. Patterson was causally negligent as a matter of law. We cannot agree. Defendant contends Mrs. Patterson gave three versions of what happened, indicating that she did not know the position of her feet with

respect to the wall, was not watching her step, and that this is causal negligence as a matter of law. A reading of the record clearly shows that the question of her negligence was for the jury.

The son's testimony as to where his mother's feet were and what she was doing at the time the wall collapsed is clear and precise. The jury could well consider that he was in an excellent position to know the facts since he was then standing close to the wall and with his eye level just above the level of the wall and just above the level of Mrs. Patterson's feet. He testified she was standing on the grass just behind the stones when the wall collapsed.

The fact that the wall constituted a hazard of which the defendant should have known, as the jury found, does not compel the conclusion that Mrs. Patterson should have known it to be a hazard. We must take the testimony most favorable to her. She had observed the rooms and the surrounding area in daylight, but only in a general way; she had paid no particular attention to the wall and had no occasion to inspect it carefully. The lawn area confined by the retaining wall was meant to be used by guests occupying Room 1; defendant had placed lawn chairs there. While it was dark when Mrs. Patterson went out to call Steve, she could see where she was going and she could see Steve on the driveway area below the wall.

As to the finding that the wall was a hazard, the rule is stated in 65 C. J. S., Negligence, p. 579, sec. 81, as follows:

"As a general rule, the owner or other person in control of premises need exercise only due care with respect to the safe condition of the premises, and may not be held responsible for injuries where such care is exercised. What is reasonable care depends on the nature of the property and the dangers in its use ordinarily to be apprehended, and what constitutes a reasonably safe condition of premises for the protection of persons rightfully using them depends on the

nature of the use of, or activities conducted in, the building and the circumstances surrounding the particular situation. So the owner of a building is not responsible for injuries resulting from unusual and unexpected uses of his property, contrary to its purpose and design. Ordinarily due care is exercised where the construction and maintenance of the premises are substantially the same as those which have been in common and general use for a long period of time in similar buildings unless it appears that such general usage is inherently dangerous or obviously improper."

Even if it is assumed, as defendant maintains, that it was Mrs. Patterson who "disturbed" the wall so as to cause its collapse, it cannot be said as a matter of law that her use of the wall, whether she was walking up to it, standing behind or upon it, was an "unusual or unexpected" use. The lawn area inclosed by the wall was meant for the use of guests in Room 1, and the top of the wall was simply the edge of that area. To be sure, it was a retaining wall designed to maintain the level of the lawn above the area to the north and west of it, and the testimony of one Harold Vik, a professional engineer, is that for the purpose of a retaining wall it was adequately constructed and of a type in common use in the vicinity. On cross-examination Mr. Vik clearly stated, however, that he was considering its adequacy only from the standpoint of what is proper to retain the soil, and not from the standpoint of the safety of persons who might be in the vicinity of the wall.

It was for the jury to decide whether the construction of the wall was proper, considering the use for which it was intended and the use to which it was being put by Mrs. Patterson at the time of the accident.

Also for the jury was the question whether the defendant, in the exercise of reasonable care, knew or should have known that the wall constituted a hazard. There was testimony by the manager of the resort that he had made an

inspection of the wall in June of 1957, at which time he tested it by stepping on the wall and checked the ground behind it for erosion. While it is true that the mere occurrence of the accident is not proof of negligence on the part of the defendant, the facts regarding its collapse gave rise to the inference which the jury was entitled to draw that the inspection made in June was not as thorough as it should have been. The manager testified that over the years dirt would wash from the ground back of the wall into the wall; that water would seep through and that there was a small cedar tree growing right in the wall, its roots going down into the rocks which form the wall. There is no testimony that his inspection included a probe of the soil back of the wall or that he removed any of the stones to determine the actual condition which existed behind the wall.

The fact that after the accident the ground above the area where the stones fell was solid and undisturbed does not rule out erosion as an explanation of the collapse of the wall. If dirt had washed into the wall from the soil behind, the space left by such erosion would become a part of the hole left by the falling stones. The jury had the benefit of a number of photographs of the collapsed wall and the surrounding area. Exhibit 12, which is one of such photographs, is printed herewith. The matter of drawing the proper inferences from all the evidence was for the jury.

So far as the question of warning is concerned, the evidence is undisputed that no signs or guardrails were placed in the area of the wall and no instructions of any kind were given to guests with respect to use of the wall. The evidence also showed that the only light which would have illuminated the area where the accident occurred was not burning at the time Mrs. Patterson fell. Defendant argues that the trial court erred in refusing to give its requested instruction on duty to warn. Even if the refusal to give the instruction

Exhibit 12.

was error, which we are not deciding, the finding of negligence as to the "hazard" would be sufficient to sustain the verdict. So the defendant can attach no prejudice thereto.

The jury awarded damages to Mrs. Patterson in the amount of $1,550 for pain and suffering to date of trial, $700 for loss of wages to date of trial, and $7,950 for permanent or future injury. Defendant contends that the damages awarded for loss of wages and permanent injury are excessive.

Seventeen months elapsed between the time of the accident and the trial, so the award of $700 for loss of wages amounts to about $40 per month. Up until 1954 Mrs. Patterson had been variously employed, earning from $100 per month for part-time work to $55 or $60 per week full time. In April of 1957 she began her training as a sales representative for World Book Encyclopedia. By the time of the accident she had earned commissions, on two sales, of about $50. Since the accident, Mrs. Patterson testified, she was unable to do any work outside her home. Defendant maintains that her earnings from encyclopedia sales, $50 in three months, should be considered the maximum upon which to base the award. Since Mrs. Patterson had only begun her training as a sales representative three months before the accident, had made only three calls and sold two sets, the $50 commission earned in that time hardly indicates the extent of her earning capacity. From all the evidence in the record it must be held that an award amounting to $40 per month is not excessive.

Mrs. Patterson's injury was a comminuted, or compressed, fracture of the right tibia at the ankle. The fracture healed but the alignment was not good. The right ankle is larger than the left and there is limitation of motion in all directions of about 10 per cent. There is a crepitus, or grating, in the ankle on all motions. The calf of the right leg is smaller than the left. The medical testimony was that there is osteoarthritis in the joint, which has a tendency to worsen. Mrs. Patterson testified the ankle is stiff and her

foot feels numb and she experiences pain from time to time; the ankle swells when she is on her feet a long time and there is a tenderness and a clumsiness and she has some difficulty in descending stairs. She cannot wear high heels. The medical testimony was that the arthritis in the joint will become worse, causing more pain and fatigue in the future. The ankle is in as good condition as it will ever be, her difficulties and pain will be greater in the future, and there is no further treatment which will improve the condition. Mrs. Patterson was thirty-seven years old at the time of trial, with a life expectancy of 30.35 years.

In view of Mrs. Patterson's age and the undisputed medical prognosis of increasing arthritis in the injured joint which will cause more pain and difficulty as the years go by, we consider the award of $7,950 for permanent or future injury reasonable. It may be observed that defendant attacks the award of damages only with respect to Mrs. Patterson's loss of wages and future injury, but apparently considers reasonable the award to her for pain and suffering to date of trial and to her husband for loss of her services, the latter being fixed at $650. It .does not seem likely that the jury would exercise prejudice and perverseness in fixing two of the awards and act fairly and impersonally in fixing the others.

*By the Court.*—Judgment affirmed.