Sylvia **MIRON**, a minor, by Herbert M. Hiller, her guardian ad litem, and Hermine Kalter, Plaintiffs,

v.

APCO CORPORATION, Systems Auto Parks & Garages, Inc., Alhambra Holdings, Inc., and Lois Smith, Defendants.

No. 66–C–217.

United States District Court
E. D. Wisconsin.

May 22, 1968.

Rudolph & Stack, Milwaukee, Wis., for plaintiffs.

John A. Kluwin, Milwaukee, Wis., for Systems Auto Parks & Garages, Inc.

Wickham, Borgelt, Skogstad & Powell, Milwaukee, Wis., for APCO Corporation and Alhambra Holdings, Inc.

## OPINION

MYRON L. GORDON, District Judge.

It is unnecessary to recite the facts of this case, except insofar as they relate to matters which this opinion will discuss. It is clear that Miss Miron, the injured plaintiff, was not negligent.

### The Question of Fault

At the conclusion of the trial, I expressed my finding that the testimony of Lois Smith was wholly credible, and that I was of the opinion that she had truthfully and accurately described the nature of her automobile's impact with the parking lot wall. I now add the conclusion that she was not negligent. In my view, Mrs. Smith acted in a reasonable manner in seeking to remove her vehicle from the parking position and in the manner in which she did so. Her backing her car to a point where it "touched" the parking lot wall was a non-negligent act.

Mrs. Smith's version of what transpired is substantially supported by the independent evidence of Barbara Resseguie, who observed that Mrs. Smith used the wall as a "guide" and only "tapped" the wall with the rear of her car. Mrs. Resseguie's testimony helps persuade me that minimal force was involved.

Systems Auto Parks & Garages, Inc., operated the parking facility on the lot in question. The manager of the lot, Stanley Woznick, Jr., an employee of Systems, testified that perpendicular parking to the south wall was in fact frequently used when the lot was busy, even though the marked lines contemplated only parallel parking to such wall. Thus, the so-called "aisles" of the parking lot were utilized for the positioning of cars perpendicular to the south wall.

With reference to the west wall, where perpendicular parking was called for by the marked lines, there were wheel stops to protect the wall from any contact with the cars. There were no such wheel stops along the south wall, even though perpendicular parking was in fact practiced.

Mr. Woznick also testified that patrons of the parking lot were frequently permitted to remove their own cars without awaiting the services of the parking attendants. It follows, therefore, that Systems was responsible for Mrs. Smith's being in a position where she, rather than an attendant, attempted to extricate her car which had earlier been parked by an attendant perpendicular to the unprotected south wall. Mr. Woznick testified that he had been aware of the fragile character of the wall. He feared that it could not stand a slight bump. Notwithstanding this knowledge, which was attributable to his employer, Systems permitted the parking practices described above.

From the foregoing analysis, I find that Systems was negligent in parking

vehicles in a perpendicular manner to the south wall in the absence of protective wheel stops and in allowing patrons to attempt to remove such perpendicularly parked cars from their parked positions.

APCO Corporation engaged architects to design this wall. It is apparent from the testimony that it was not of sufficient strength to function as a retaining wall, i. e. a wall which could sustain minor or even moderate bumps from automobiles as they moved about the parking lot. However, the evidence persuades me that this wall was never intended by APCO to be a retaining wall. Instead, it was a mere ornamental enclosure designed for decorative purposes. The latter conclusion stems from the fact that APCO Corporation caused concrete wheel stops to be placed along the west wall where perpendicular parking was permitted, but it caused parking stall spaces to be marked parallel to the south wall. The parking spaces along the south wall were sufficiently far away from such wall to have obviated any unreasonable hazard with regard to the wall, asuming that the marked lines were honored. Thus, APCO supplied a parking lot to its tenant, Systems, which, if utilized by Systems in a careful fashion, would not have exposed persons near the wall to any risk of harm.

Is it fairly arguable that APCO was negligent because it caused a fragile wall to be placed in an area where there was an opportunity for automobiles to come into contact with such wall? I believe that this was not an act of negligence in view of the additional protections which APCO took described above. There is nothing inherently careless about building a decorative wall which cannot withstand great force, even though it surrounds a parking lot, provided adequate measures are also adopted to preclude the reasonable likelihood of cars coming into contact with the wall. APCO met that standard of due care with wheel stops where perpendicular parking was indicated and by an adequate buffer zone where parallel parking was mark-ed. The negligence of Systems in ignoring the markings and parking cars perpendicular to the south wall was the sole cause of this accident in view of the fact that Systems knew of the fragile character of the wall.

In discussing whether a particular retaining wall was hazardous, the Wisconsin supreme court said in Patterson v. Silverdale Resort, Inc., 8 Wis.2d 572, 577, 99 N.W.2d 730, 733 (1959):

> "It was for the jury to decide whether the construction of the wall was proper, considering the use for which it was intended and the use to which it was being put * * *."

Systems cites the case of Johnson v. Meyer's Company, 246 N.C. 310, 98 S.E. 2d 315 (1957). In that case, a pedestrian received injuries when the defendant's advertising sign fell on the pedestrian. The sign fell when an unknown motorist in the defendant's parking lot backed into the sign. The court stated that there was no evidence to show that the sign fell because of any negligence in its construction or maintenance. There are major distinctions between the instant case and the *Johnson Case*. In that case, the court determined that the sign fell because the car backing into it struck a heavy blow. The court in the *Johnson Case* concluded that the defendant could in no way have foreseen the events that transpired, but Systems should have expected that a car would make contact with the south wall.

### The Question of Damages

■ Miss Miron was sixteen years of age at the time of her accident, and in my opinion, she sustained substantial injuries. They have been described at some length by her, by Dr. Spitz, and by Dr. Stone. The court has also had the benefit of Dr. Cole's appraisal of her injuries.

The record is clear that Miss Miron sustained injuries which were painful and which caused her to be conveyed to the hospital by ambulance. She endured a closed reduction of the fracture of her

right leg. She wore a cast and used crutches and a cane for an extended period. The entire period of healing was five months.

After the healing period was ended, there was a "malunion" of the fracture. When she was examined by Dr. Stone a year after the accident, she was still enduring pain in her right leg.

The court observed a readily apparent deformity in Miss Miron's right leg at the time of trial. There were several markings on the lower portion of her leg, and, more significantly, a flattening of the front portion of the lower leg which was noticeable to sight. There was medical evidence that long after the accident she suffered from weakness in her leg and, in addition, there is medical evidence that she has a permanent disability in connection with it. The weakness in her leg is described as being the result of the fracture and the immobilization which was required while she wore the plaster cast. Dr. Stone deposed that he observed definite atrophy of the right thigh, and Dr. Spitz supported the conclusion that there was a deformity. Dr. Spitz also testified to her having been emotionally upset and having sustained anxieties.

Although there was evidence offered as to Miss Miron's inability to perform certain work after her accident, the court is not persuaded that there has been an adequate showing to justify any award for loss of earning capacity. She is currently gainfully employed. She is also engaged to be married. However, the court deems that her right leg is permanently deformed and that, as such, it has a somewhat negative impact on this young lady's appearance.

It is my conclusion that for Miss Miron's pain, suffering and disability, past, present and future, the sum of $9,000.00 represents a reasonable amount of damages.

A number of bills were received in evidence, and they appear to represent reasonable expenses resulting from the accident in question. Mrs. Kalter, mother of the injured girl, seeks recovery for those bills which total approximately $1,300.00. The testimony shows that some of the bills are unpaid, some were paid by the insurance of her present husband (who is not the natural or adoptive father of Miss Miron), and at least one of the bills is addressed to an attorney.

In my opinion, the medical and hospital expenses totalling $1,300.00 have been shown to be the obligation of Mrs. Kalter, who was given legal custody of Miss Miron when her parents were divorced. Mrs. Kalter is the one responsible for such bills and is entitled to recovery in this action, notwithstanding the fact that such bills may not have been paid in full, or that insurance of her second husband was utilized for such payment. McLaughlin v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co., 31 Wis.2d 378, 143 N.W.2d 32 (1966).

## CONCLUSION

The court reserved for subsequent briefing such problems as might arise between Systems and APCO in connection with their contractual relationship. In view of my finding that Systems is the sole negligent defendant, it would seem that the reserved question is now moot.

The plaintiffs' counsel may present a proposed order for judgment consistent with this opinion but should not do so until at least two weeks from the date of this opinion in order to enable any of the defendants to have an opportunity to submit briefs on the question that was reserved at the conclusion of the trial. It would seem, however, that, as noted earlier, there is no necessity for such briefs.