CITY OF MILWAUKEE, Appellant, vs. MILWAUKEE COUNTY, Respondent.

*September 13—October 8, 1940.*

For the appellant there were briefs by *Walter J. Mattison,* city attorney, and *Ronold A. Drechsler,* assistant city attorney, and oral argument by *Mr. Drechsler.*

For the respondent there was a brief by *Herbert J. Steffes,* district attorney, *O. L. O'Boyle,* corporation counsel, and *Henry S. Reuss,* assistant corporation counsel, and oral argument by *Mr. Reuss.*

FOWLER, J.   The action is brought by the city of Milwaukee to recover from Milwaukee county over $100,000 on three causes of action, each involving an amount claimed to be due under statutes of the state imposing costs of maintaining the district and municipal courts of Milwaukee county upon the two municipalities.   The county by counterclaim demands an offset to each of the causes of action of certain amounts for which the county claims credit.   The offsets claimed reduce the amount to which the plaintiff is entitled to judgment to about $26,000.   A demurrer for

insufficiency of facts was interposed by the city to each of the county's counterclaims and overruled. The city thereupon replied to each of these counterclaims, and the county demurred to each of the replies for insufficiency, and each of these demurrers was overruled. The replies of the city set forth the statutes which placed initial payment of the salaries and reporters' fees involved on the county, and alleged that prior to 1937 the county did not claim credit for any of the items for which it claims offset. The city appeals from the latter class of orders. The demurrer to the reply brings up for review the antecedent pleadings so that the real problem before the court is to determine what items of expense of the two courts must be shared equally by the parties. This requires a consideration of the original acts creating the two courts, and the changes of those acts made by subsequent statutory enactments.

The years involved in the three causes of action are 1937, 1938, and 1939, and the action involves an accounting between the parties for costs of the operation of the municipal and district courts. Three items of expense are in controversy, (1) the compensation paid the municipal court reporter, (2) the compensation paid the district court reporter, and (3) the fees collected by the clerk of these courts. These items will be considered separately.

(1) The municipal court was created by ch. 199, P. & L. Laws of 1859. The court was given criminal jurisdiction of crimes and misdemeanors except those punishable by death or life imprisonment and of prosecutions for violation of city ordinances, and the judge of the court was given all powers as a committing magistrate of a justice of the peace. Sec. 23 provided the clerk should procure and furnish "all the necessary blanks, stationery, court, jury-room and office furniture, book and paper cases, desks, record books, lights and fuel, for the use of the court and clerks" at the expense of the city of Milwaukee. Sec. 25

provided that within prescribed limits the salaries of the judge and the clerk should be fixed by the city council and "paid out of the city treasury." Sec. 28 provided that "all fines, penalties and clerks fees collected in criminal cases and paid into the city treasury" should be "accounted for and paid over annually to the county treasury," and the county should annually "account to the city of Milwaukee for one half of the salaries of the municipal judge, clerk, assistant clerk, blanks, stationery, record books, office furniture, lights and fuel" for the court "paid and furnished by said city." Thus the original statute plainly provided that the entire cost of maintenance of the court was to be shared equally between the city and county, and for an accounting to determine what this cost was.

Ch. 202, Laws of 1875, provided a stenographic reporter for the municipal court who should be a sworn officer of the court and provided for him a per diem salary to be paid as provided by law for the payment of circuit court reporters. Said chapter also provided that the transcript fees of said reporter chargeable to the public should be paid in the same manner as his per diem was paid, and that the reporter's stationery was to be furnished in the same manner as the clerk's. Circuit court reporters were then paid, as was "provided by law for the payment of the sheriff for attending upon the circuit court." Sec. 2438, R. S. 1878. The sheriff's compensation for attending circuit court was then paid by the county. See R. S. 1858, ch. 133, sec. 1, Twenty-second; sec. 733, R. S. 1878.

The provisions relating to the municipal court were carried into R. S. 1878. Sec. 2499 provides that "The municipal court of the county of Milwaukee . . . is continued." The provisions of the original act of 1875 are for the most part set out verbatim. The provision of ch. 202, Laws of 1875, providing for the appointment of a reporter and making him a sworn officer of the court is so set out. Some changes from the original acts which were made are

highly significant. Sec. 2508 provides for the appointment of a reporter as an officer of the court as provided by ch. 202, Laws of 1875, but expressly declares that the salary and transcript fees of the reporter "shall be paid in the same manner that the other expenses of the court are' paid," instead of by the county as in ch. 202. The words "account to" in the original act were changed to read "pay to" in sec. 2512, but the latter is used as synonymous with "account to," for if the expenses of the court "paid by the city" were to be shared by the county an accounting for these expenses between the two municipalities was necessarily implied. The word "paid" in the phrase "paid by the city" obviously means "paid" in the first instance. These two changes clearly show that this item of expense was to be shared equally between the city and county. Revisions of statutes do not change the meaning of the statutes revised, unless the intent to change their meaning necessarily and irresistibly follows from the changed language. *Kugler v. Milwaukee,* 208 Wis. 251, 242 N. W. 481. The changes above noted indicate not only that the expense of the reporter's compensation was to be shared by the city and county, but that that was the intendment of ch. 202, Laws of 1875. The provisions of that statute that the compensation of the reporter should be "paid" as the sheriff was paid, meant merely paid by the county in the first instance, as the word "paid" in the phrase "paid and furnished by the city" in the original statute meant paid in the first instance. The city by implication was required under ch. 202 to account to the county for the expense of the reporter just as under the original statute the county was required "to account to" the city for the other expenses of the court.

The municipal court provisions, as contained in R. S. 1878, were amended by ch. 195, Laws of 1893, to fix the salary of the reporter at $2,000 per year, without saying by whom it should be paid, but by implication leaving it pay-

able by the city. It made transcript fees of the reporter, so far as a public charge, payable by the county instead of by the city as theretofore. That the payment of these transcript fees was made payable in the first instance by the county instead of by the city as declared by the R. S. 1878 provisions did not in our opinion change the obvious and fundamental purpose and intent that all expenses of the court, including those incident to the reporter, should be shared by the municipalities. No more does the fact that the transcript fees were made payable by the county in the first instance by said ch. 195, change such purpose and intent that such fees as an expense of the court should be so shared.

The next statute bearing on the question before us is ch. 59, Laws of 1905, which gave power to the board of supervisors of counties of 100,000 or more inhabitants to fix the salary of the judge of the municipal court of such county. Milwaukee county was the only county having such population, so that the statute was necessarily aimed at the municipal court of that county.

The next statute enacted relating to the salary was ch. 473, Laws of 1907, which fixed the reporter's salary at $3,000, and made it payable monthly by the county. It left the reporter's supplies to be furnished him but does not say by whom they were to be furnished or paid. It made his transcript fees so far as payable by the public payable by the county.

The next statute involved is ch. 228, Laws of 1909, which empowered the board of supervisors of the county to fix the salary of the clerk and deputy clerks of the court. It does not say by whom such salaries should be paid. They were thus left payable in the first instance by the city as theretofore.

Ch. 151, Laws of 1919, provided that the salary of the reporter of the municipal court should be fixed by the county board and paid by the county. The reporter's sup-

plies were to be furnished him. Nothing was said as to by whom they were to be furnished or paid, and they were thus left as theretofore to be paid by the city. Transcript fees payable by the public were to be as fixed by the county board and paid by the county.

Ch. 294, Laws of 1923, deals with the municipal court, but merely adds a provision to the provision requiring the city treasurer to account for fines and penalties in criminal cases and payment by the county of half the court expense paid by the city. The added provision relates merely to deposit of funds in a city depository bank. It makes the clerk of the court account for interest on such deposits and pay it over to the city treasurer, and requires the city treasurer to apply the interest to the "above-mentioned salaries and expenses" of the court and the clerk's office, and provides that the "net balance" shall be shared equally by the city and county. The "above-mentioned salaries and expenses" are the itemized expenses of the court carried through from the original act creating the court and "all other expenses of said court paid for by the city."

Ch. 368, Laws of 1929, applies to the municipal court, but merely adds to existing statutes provisions for destroying old files of the court.

From the whole picture of the municipal court, as depicted by the statutes relating to it, it appears to us that the original intention to share the expenses of maintenance of the court equally between city and county still inheres, and the salary and transcript fees of the reporter so far as chargeable to the public are as much an item of the cost of maintenance as is any one of the items originally enumerated. If the enumerated items of expense originally provided for, which included all costs of maintenance, should be shared, so should the items of expense later added. In the original act, sec. 28, ch. 199, P. & L. Laws of 1859, only one "assistant clerk" is mentioned whose salary among the

other items mentioned was shared equally. The reporter's salary, as well as the salaries of the assistant clerks subsequently added to the clerical force, is as much an added cost of maintenance as the salaries of the latter, and should be shared for the same reason as the latter. All are officers of the court, all are essential to its operation, all are items of additional expense. All are included in the "other expenses of the court" covered by the quoted phrase in the R. S. 1878, which is still retained in ch. 294, Laws of 1923, which is the last act expressly referring to sharing of expenses, and all should be shared as were the original items of expense of operation. No especial provision for sharing the additional clerical expense appears in the statute. No more should especial provision for sharing the expense of the reporter be expressed. That the one item is in the first instance paid by the city and the other by the county is wholly immaterial. The word "paid," whether relating to payments by the city or by the county, wherever it appears in the several statutes, means paid in the first instance. That is necessarily its meaning in the original act, else there would be no accounting by the county to the city for expenses paid by the city as by that act required. No reason is perceived for giving it any different meaning in any of the later statutes.

(2) The district court of Milwaukee county was created by ch. 218, Laws of 1899. It has jurisdiction of prosecutions for violation of city ordinances and of misdemeanors, as distinguished from felonies. The district judge is given exclusive jurisdiction of preliminary examinations in criminal cases. Secs. 5 and 6. Sec. 8 of the act provides that the place of holding the court shall be provided "by said city and county of Milwaukee." Sec. 9 provides that the clerk of the municipal court shall be the clerk of the district court. The clerk procures and furnishes "all the necessary blanks, stationery, book and paper cases, desk,

record books, office furniture, lights and fuel for the use of said district court and its clerks, at the expense of said city and county." The sheriff of the county is the "officer of said district court." Sec. 11. The salary of the judge was fixed by the statute and made payable monthly by the city. Sec. 16. Sec. 12 provides for a stenographic reporter for the court. His salary was fixed by the statute and was to be paid "monthly by said city." He was to be furnished his stationery. The statute does not expressly say who should furnish or pay for it but it manifestly was "stationery . . . for the use of said district court" and therefore by sec. 9 to be procured by the clerk "at the expense of said city and county." Sec. 14 provided that the fines and penalties collected in criminal cases should be paid over to the county treasurer at the time of the payment of the state and county taxes, and one half the salaries of the judge and reporter should then be paid over by the county to the city together with one half of the expense of the items expressly covered by sec. 9 of the act above enumerated and "all other expenses of said court which may have been paid for by said city."

The 1899 act was amended by ch. 363, Laws of 1901, but not in respect to the reporter's salary or fees. Ch. 429, Laws of 1905, empowered the county board to fix the salary of the reporter and his fees for transcripts so far as chargeable to the public. Neither of these acts affected the sharing of these items as an expense of the court. There is no doubt that the law as expressed by the statutes relating to the court above cited required the reporter's compensation, both salary and transcript fees chargeable to the public, to be shared by the city and county.

By ch. 490, Laws of 1911, the law was amended in respect to supplies, salary, and transcript fees of the reporter. The supplies were to be furnished by the county clerk upon the reporter's requisition and paid for by the county treas-

urer. The salary and the transcript fees chargeable to the public were left to be fixed by the county board and were made payable monthly by the county. The language of the act is that these items "shall be payable" to the reporter "each month out of the treasury of said county." The word "payable" here as in the provisions relating to the municipal court means payable in the first instance by the county instead of as theretofore by the city. It should not be inferred that the 1911 statute contemplated any so radical change in the basic law that required accounting for and sharing the expenses of the court, as to free the city from its share of the expense of maintaining the court that was attributable to the reporter.

Sec. 2 of the 1911 act provided that "all acts and parts of acts contravening the provisions of this act are hereby expressly repealed," and it is urged that this indicates intent to repeal the provisions of the prior acts bearing upon the matter of sharing the expense of fees, salary, and supplies of the reporter. We do not so consider. Repeals by implication are not favored. If the sharing between city and county of the expenses of the court was intended to be repealed or in any way changed this could only be accomplished by expressly so providing. The act of 1907 changing initial payment of the salary of the municipal court reporter from city to county contained an identical repealing provision, but so radical and fundamental a change in the original act as to abolish sharing an item of court expense, there as here, should not be left to inference by implication, but should be expressly declared.

Since 1911 the law relating to the district court has been several times amended. Ch. 702, Laws of 1913, fixed the salary of the judge and provided it might be increased not only by the city as theretofore but by either the city or the county board. Ch. 619, Laws of 1915, changed the mechanics of the payment of the reporter's fees for tran-

scripts chargeable to the public but left them payable by the county. Ch. 20, Laws of 1925, left the salary of the district judge to be paid by the city as theretofore but empowered the county to raise it. None of these statutes enacted subsequent to 1911 affect the matter of the sharing of the salary and transcript fees of the reporter by the city and the county.

(3) The city claims that the fees of the clerk collected by him are not shareable by the county, because they are required by the statutes to be paid over to the city treasurer and there is no provision in the statutes requiring the city treasurer to pay them over to the county treasurer. The county claims that these fees must be accounted for by the city and deducted from the costs of the maintenance of the court, one half of which is by the statute chargeable to the county.

We are of opinion that the county's contention must be sustained. The clerk and his deputies are paid fixed salaries and all fees collected by the clerk must be turned over to the municipalities of which the court is an instrument or arm. The expenses of the court are chargeable to the two municipalities in equal portions. The fees collected are income of the court and operate to reduce the expense of the maintenance of the court. It is the net expense, not the total expense that is shareable. If the fees collected by the clerk aggregated more than all the expenses of the court, including the salaries of the judge and the reporter, the city, according to its theory, would not only pay nothing toward that expense, but would be entitled to the excess, while the county would be still required to pay to the city one half of that expense.

This view receives support from an amendment to the municipal court act, ch. 294, Laws of 1923, referred to above in considering the accounting between the parties for the salaries of the judge and reporter of the munici-

pal court. The chapter imposes on the clerk the duty of depositing the costs collected by him, which include his taxable fees as well as penalties, in a city bank depository, and provides the interest accumulating to the city from these deposits shall be applied by the city treasurer to the salaries and expenses of the court and the clerk's office and that the "net balance" so struck shall be shared equally by the city and county. The clerk's fees, like interest on these deposits, are income of the court, and the expense of maintenance is the "net balance" between total expenditures and income.

It is thus plain that the county is entitled to offset the fees of the clerk collected by him as an offset to the city's claim.

(4) Appellant claims that the statutes involved have been given a practical construction by a course of dealing between city and county in accordance with its contentions. It alleges in its reply, which the demurrer thereto admits, that prior to 1937 the county paid the salaries and transcript fees of the reporters of the two courts and that the county did not require an accounting credit for those expenditures. It also alleges that prior to 1937 the county never claimed any part of the fees paid to the clerk of the courts or required the city to account for any fees paid by the clerk into the city treasury. It urges that these admitted allegations show a practical construction of the statutes involved, and that the county after such construction may not now assert a construction of the statutes contrary thereto. This contention does not appeal to us. The accounting, such as there was, was done by the county and city treasurers. If either of them was derelict in his duty in respect of asserting legal claims the municipality he acted for is not barred from asserting such claims. These officers did not constitute the responsible authori-

ties of the municipalities. The city council and the county board are the authorities that act upon claims and control finance, and it does not appear that the matters or the statutes involved or the acts of the respective treasurers in respect of the matter were ever called to their attention. It is true that construction of a statute long continued by those charged with its administration is entitled to consideration, and is sometimes controlling, when courts are called upon to construe it. *State ex rel. Green v. Clark,* 235 Wis. 628, 294 N. W. 25. But it is also true that at other times it has little weight. It is not conclusive. *State ex rel. Board of Regents v. Zimmerman,* 183 Wis. 132, 149, 197 N. W. 823. The contention of the city in effect is that the county did not for many years assert its rights, as we by our decision have determined them to be, and it therefore cannot now assert them. It is said in *Helvering v. Hallock,* 309 U. S. 106, 120, 60 Sup. Ct. 444, 84 L. Ed. 604:

"Inaction by the treasury can hardly operate as a controlling administrative practice, through acquiescence, tantamount to an estoppel barring re-examination by this court of distinctions which it had drawn. Various considerations of parliamentary tactics and strategy might be suggested as reasons for the inaction of the treasury and of congress, but they would only be sufficient to indicate that we walk on quicksand when we try to find, in the absence of corrective legislation, a controlling legal principle."

If we substitute "county treasurer" for "treasury" and "county board" for "congress" in the above quotation it will express the instant situation.

(5) The answer alleges, in substance, that the reporter of the district court, for his own purposes and without intent to affect the accounting between city and county for his compensation as originally provided, drafted and pro-

cured the enactment of the statutes changing the initial payment of his compensation and for his supplies from the city to the county. These allegations, so far as they relate to the intent of the draftsman, as held by the trial court, have no place in construing the statutes involved. *Casper v. Kalt-Zimmers Mfg. Co.* 159 Wis. 517, 524, 149 N. W. 754, 150 N. W. 1101; *Northern Trust Co. v. Snyder,* 113 Wis. 516, 530, 89 N. W. 460.

We believe the above sufficiently covers the contentions of the parties. Other reasons are suggested by counsel in the briefs and were given upon the argument in support of their respective positions. To discuss them all would unduly extend this opinion and serve no useful purpose.

*By the Court.*—The order of the circuit court is affirmed.