HOLTAN, Appellant, vs. BJORNSON, Respondent.

*December 4, 1951—February 5, 1952.*

*Burr Tarrant* of Whitehall, and *Ralph S. Lund* of Black River Falls, for the appellant.

For the respondent there was a brief by *John Oltman* of Ellsworth, and *Slocumb & Bundy* of Menomonie, and oral argument by *Mr. Oltman* and *Mr. Ira O. Slocumb*.

FRITZ, C. J.   Upon the evidence introduced on the trial the court found:

That in December, 1949, Holtan visited Spring Valley and inquired of Bjornson regarding certain machinery which he was offering for sale, and that he gave Holtan prices on a nailer, a saw, and a planer, and that Holtan later purchased the nailer and the saw. That Holtan located Julius Erickson at Blair, Wisconsin, who was interested in buying a planer if he could trade lumber for it. That on January 5, 1950, Holtan took Erickson to Spring Valley to show him Bjornson's planer and induced Erickson to buy it; and Holton also had in mind the additional purpose of inducing Bjornson to buy about forty-five thousand feet of mill-run oak lumber which Erickson offered him in trade for the planer, and to allow Bjornson credit for the planer at the price which he had previously offered to accept. That while in Spring Valley, Holtan negotiated separately with both Erickson and Bjornson and as a result made two oral agreements; that Holtan's agreement with Erickson was that he would have the planer delivered to Erickson at Blair and in return Erickson would furnish forty-five thousand feet of oak lumber to Holtan at Blair in payment; that Holtan's agreement with Bjornson was that he would buy the planer for $800 and that Bjornson would buy forty-five thousand feet of oak lumber for $40 per thousand, delivery to be

accepted at the Erickson yard at Blair and that Bjornson would deliver the planer to Holtan in Blair; and that the agreement was subject to Bjornson's inspection of the lumber at Blair within the next few days.

But no down payment was then made on either agreement; none of the goods mentioned were then delivered and no memorandum in writing was made and both agreements, that is, the one between Holtan and Erickson and the one between Holtan and Bjornson were unenforceable because of the provisions of sec. 121.04 (1), Stats. The next day, or the day after that, Bjornson went to Blair to inspect the lumber which he was to buy under the agreement with Holtan and while at Blair, Bjornson discovered there were two agreements made at Spring Valley the day that Holtan and Erickson visited there; and after inspecting the lumber and questioning Erickson about the agreement to trade lumber for the planer, Bjornson restated the agreement so as to run directly between Erickson and himself, as follows: Bjornson agreed to deliver the planer to Erickson at Blair in exchange for forty-five thousand feet of mill-run oak lumber delivered by Erickson at his yard in Blair; and Erickson also agreed to deliver as much more of said lumber as he had available to Bjornson at his yard in Blair at $40 per thousand; and Bjornson agreed to pay cash for all lumber accepted by him in excess of forty-five thousand feet.

The court found that Erickson was not the agent of Holtan in accepting the planer and was not Holtan's agent in delivering the lumber to Bjornson. And the court found and concluded that as no memorandum in writing for the sale of the lumber by Holtan to Bjornson was made between them, any oral agreement between them never became enforceable because of the statute of frauds, sec. 121.04 (1), Stats. But the court adjudged that Holtan should have as a commission, judgment against Bjornson for an admitted liability of $94.94 with interest and costs and disbursements. Holtan appealed from the judgment.

In answer to Holtan's complaint Bjornson alleged a general denial, in connection with other matters of defense, but

*did not allege* that sec. 121.04 (1) of the statute of frauds was a bar to plaintiff's cause of action. That statute provides:

"(1) A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upwards *shall not be enforceable by action unless* the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or *unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."*

It is undisputed that the value of the lumber was upwards of fifty dollars; that no part thereof was accepted or received by Bjornson from Holtan or anything given in earnest to Holtan to bind a contract and that there was no note or memorandum in writing of a contract or sale signed by Bjornson, the party to be charged, or his agent in that behalf. On the trial Bjornson contended that the alleged oral contract was unenforceable under sec. 121.04 (1), Stats., because—as the court found—the lumber was delivered by Erickson to Bjornson and there was no agency of Erickson for Holtan in the delivering of the lumber to Bjornson. These findings are sustained by the evidence and the accuracy thereof is not questioned by Holtan in his brief. In order to take the transaction involved in respect to the delivery of the lumber out of the statute of frauds, there would have had to be both a delivery thereof by Holtan to Bjornson and the acceptance thereof by Bjornson from Holtan. Consequently, there was applicable the rule that " 'Acceptance and receipt' includes delivery by the seller by such transfer of possession as the property is susceptible of and receipt on the part of the buyer by affirmative action on his part, and mere words are not sufficient to establish 'delivery and receipt.' " *Mellen Produce Co. v. Fink,* 225 Wis. 90, 91, 273 N. W. 538; *S. T. Edwards & Co. v. Shawano Milk*

*Products Co.* 211 Wis. 378, 247 N. W. 465; *Friedman v. Plous,* 158 Wis. 435, 149 N. W. 218; 49 Am. Jur., Statute of Frauds, p. 588, sec. 272. The effect of the court's finding of no agency of Erickson for Holtan amounts to a decision that Holtan did not deliver the lumber to Bjornson, and since there was neither acceptance nor receipt thereof by Bjornson from Holtan, it follows that Bjornson's acts in receiving and accepting the lumber from Erickson did not take the transaction out of the statute of frauds.

On behalf of Holtan, his counsel contends that because sec. 121.04 (1), Stats., was not affirmatively pleaded as a defense by Bjornson,—but who did allege a general denial,— the statute of frauds was not available as a defense in this case. That contention cannot be sustained. In *Flatley Bros. Co. v. Beauregard,* 192 Wis. 174, 175, 212 N. W. 262, the court stated:

"A preliminary question of pleading is raised. Appellant contends that the court erred in determining that the contract was void under the statute of frauds because of the fact that this defense was not pleaded. The complaint alleged that the plaintiff 'sold and delivered' the tile to the defendant. This allegation was met by a general denial. 'There is much authority to the effect that when a contract pleaded is put in issue the plaintiff in order to recover must establish a valid agreement. The defendant is not called upon to anticipate that an invalid contract will be established and to plead thereto.' *Kaufer v. Stumpf,* 129 Wis. 476, 481, 109 N. W. 561.

"In considering the cases cited by appellant which appear to sustain his position that the defense of the statute of frauds is waived if not pleaded, we must consider that our statute 'differs radically from the statute of frauds of England and of most of the states, in that, while they declare that such contracts, unless in writing, shall not be received in evidence or shall not be made the foundation of an action, ours declares that the inhibited contracts ·shall be "void," from which would seem to result the proposition that, when the plaintiff counts on such a contract and the same is not

expressly admitted by the answer, he fails to establish his allegation thereof when he merely proves an oral agreement which is no contract.' *Langley v. Sanborn,* 135 Wis. 178, 183, 184, 114 N. W. 787."

Consequently, since said decisions in *Langley v. Sanborn, supra,* and *Flatley Bros. Co. v. Beauregard, supra,* it has been the established rule in this state that the defendant's omission to claim and plead the benefit of the said statute of frauds does not constitute a waiver of that defense where it is sufficiently pleaded under a general denial. There is considerable conflict in the cases in that respect. See annotation in 64 L. R. A. 119 *et seq.—Third Nat. Bank v. Steel,* 129 Mich. 434, 88 N. W. 1050; and in 158 A. L. R. 76 *et seq.—Stanley v. A. Levy & J. Zentner Co.* 60 Nev. 432, 112 Pac. (2d) 1047.

Since the time of the decisions in *Langley v. Sanborn, supra,* and *Flatley Bros. Co. v. Beauregard, supra,* there have been revisions in the statutes in respect to "contracts relating to personalty," including the provisions in sec. 2308, Stats. (which had been renumbered sec. 241.03), that "every contract for the sale of any goods, chattels, or things in action for the price of fifty dollars or more *shall be void* unless: (1) A note or memorandum of such contract be made in writing and be subscribed by the parties to be charged therewith;" or unless there is compliance by the buyer with certain other prescribed acts or conditions, etc. In the course of those revisions, sec. 241.03, Stats., was repealed, leaving only sec. 121.04 (1), Stats., which in lieu of the words "shall be void," has the words, "shall not be enforceable." Manifestly the effect, force, and consequences of these words, when applicable to a sale of personalty for the price of fifty dollars or more, are virtually equivalent to the words "shall be void," which were used in the statute prior to said revisions. Under such circumstances there is applicable the rule and reasons therefor stated in *State v. Maas,* 246 Wis. 159, 164, 16 N. W. (2d) 406:

" 'Revisions of statutes do not change the meaning of the statutes revised, unless the intent to change their meaning necessarily and irresistibly follows from the changed language.' *City of Milwaukee v. Milwaukee County* (1940), 236 Wis. 7, 12, 294 N. W. 51; *State ex rel. Harris v. Kindy Optical Co.* (1940), 235 Wis. 498, 292 N. W. 283.

"Certainly, the construction contended for by the appellant does not 'irresistibly follow from the changed language.' It would be, indeed, strange that verbal changes in a revisor's bill could completely reverse the policy and intent of previous legislation. . . ."

*By the Court.*—Judgment affirmed.