PITTMAN, Appellant, v. LIEFFRING and another, Respondents.

*No. 147. Submitted under sec. (Rule) 251.54 May 3, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 610.)

---

54

For the appellant the cause was submitted on the brief of *William A. Adler* and *Adler, La Fave & Johnson,* all of Eau Claire.

For the respondents the cause was submitted on the brief of *Garvey, O'Brien & Anderson* of Eau Claire.

CONNOR T. HANSEN, J.   The sole issue raised by plaintiff on appeal is whether there was sufficient evidence for the trial court to instruct the jury as to the privileges granted the operator of an emergency vehicle.[1]  Plaintiff argues that the evidence, concerning the design, mounting and intensity of the red light on Lieffring's vehicle, was insufficient to warrant giving the instructions covering the exemptions granted by sec. 346.03, Stats., to emergency vehicles, and, further, that sec. 347.25 is ambiguous, and hence if interpreted properly the red light on Lieffring's vehicle did not meet the requirements of sec. 347.25 and the trial court should have found Lieffring negligent as a matter of law with respect to speed and failing to stop. The plaintiff assigns as error the trial court's denial of his motion for a directed verdict.

In the instant case, it is undisputed that Lieffring was operating an "emergency vehicle," as defined by sec. 340.01 (3) (d), Stats.   In Wisconsin, the privileges granted an operator of fire department vehicles, to ignore

---

[1] Sec. 340.01 (3), Stats., provides:

"(3) 'Authorized emergency vehicle' means any of the following:

". . .

"(d) Privately owned motor vehicles being used by deputy state fire marshals or by personnel of a full-time or part-time fire department or by members of a volunteer fire department while enroute to a fire or on an emergency call pursuant to orders of their chief or other commanding officer; . . ."

customary traffic regulations, is dependent upon statutory law.

Sec. 346.03, Stats., provides:

**"Applicability of rules of the road to authorized emergency vehicles.** (1) The operator of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions stated in subs. (2) to (5).

" (2) The operator of an authorized emergency vehicle may:

"(a) Stop, stand or park, irrespective of the provisions of this chapter;

"(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

"(c) Exceed the speed limit;

"(d) Disregard regulations governing direction of movement or turning in specified directions.

" (3) The exemption granted the operator of an authorized emergency vehicle by sub. (2) (a) applies only when the operator of such vehicle is giving visual signal by means of at least one flashing, oscillating or rotating red light. The exemptions granted by sub. (2) (b), (c) and (d) apply only when the operator of the emergency vehicle is giving both such visual signal and also an audible signal by means of a siren or exhaust whistle, except as otherwise provided in sub. (4).

" (4) . . .

" (5) The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive with due regard under the circumstances for the safety of all persons nor do they protect such operator from the consequences of his reckless disregard for the safety of others."

Sec. 347.25, Stats., provides:

**"Special warning lamps on emergency vehicles, school busses and funeral vehicles.** (1) An authorized emergency vehicle may be equipped with one or more flash-

ing, oscillating or rotating red lights and shall be so equipped when the operator thereof is exercising the privileges granted by s. 346.03. Such lights shall be so designed and mounted as to be plainly visible and understandable from a distance of 500 feet both during normal sunlight and during hours of darkness. No operator of an authorized emergency vehicle shall use such warning lights except when responding to an emergency call or when in pursuit of an actual or suspected violator of the law, when responding to but not upon returning from a fire alarm or when necessarily parked on a highway in a position which is likely to be hazardous to traffic using the highway."

The trial court instructed the jury, *inter alia*, in the following manner:

"In addition to this general definition of negligence there are other rules of law as well as statutes enacted by the Legislature for the safe operation of vehicles on the highway. A person who fails to comply with such rules or statutes is negligent as that term is used in the verdict and in these instructions.

". . .

"The operator of an authorized emergency vehicle when responding to a fire alarm may proceed past a stop sign but only after slowing down as may be necessary for safe operation, and he may exceed the speed limit, but before he can do either or both he must give an audible signal by means of a siren; and audible means capable of being heard under the circumstances then present; and in addition to the audible signal, he must give a visual signal by means of at least one flashing, oscillating or rotating red light, and this red light must be so designed and mounted as to be plainly visible and understandable from a distance of 500 feet both during sunlight and during hours of darkness. If you find that Galen Lieffring gave an audible signal by means of a siren and also that the red light on his car was designed and mounted as to be plainly visible and understandable from a distance of 500 feet both during sunlight and during hours of darkness when flashing and that it was flashing, then he was exempt from obeying the statutes regulating speeds and was exempt, if you find that he

slowed down as may be necessary for safe operation as he approached the intersection, from stopping at the stop sign. If you do not so find, that is, that he gave an audible and visible warning that I described to you, then the defendant Galen Lieffring had the duty to obey the speed statutes and to stop at the stop sign. These exemptions granted by the statute to the operator of an authorized emergency vehicle, however, do not relieve the operator from the duty to drive with due regard under the circumstances for the safety of all persons."

Plaintiff argues that the evidence produced at trial was insufficient to demonstrate the requisite intensity, "plainly visible and understandable from a distance of 500 feet," of the red light on the Lieffring vehicle, and that the trial court should have directed verdict for the plaintiff.

In the trial court's decision following motions after verdict, the trial court reaffirmed its earlier decision that the evidence produced at trial was sufficient to present a jury issue. However, in so doing, the trial court was of the opinion that the plaintiff had the burden of proof as to the insufficiency of the red light and that the evidence produced at trial was not sufficient to shift the burden to the defendants.

The trial court acted erroneously in imposing the burden of proof as to the intensity of the light upon the plaintiff. Although the plaintiff alleged the insufficiency of the equipment on the Lieffring vehicle in his complaint, the statutory exemption of emergency vehicles from adherence to traffic regulations is available as an affirmative defense, and the defendants bear the burden of proving the necessary compliance with the statutory conditions.[2] However, under the facts of this case we do not consider this to be prejudicial error.

---

[2] *See: Washington v. City & County of San Francisco* (1954), 123 Cal. App. 2d 235, 266 Pac. 2d 828.

The evidence presented at trial indicates that the Lieffring vehicle was equipped with a flashing red light with a convex lens approximately seven inches in diameter. The light was mounted on the front of the automobile about ten inches above the front bumper and in front of the nameplate and license of the automobile. The light was powered by the automobile battery in the same way that power was supplied to the headlights. The light flashed 50 or 60 times a minute. It was turned on with a switch mounted on the dash. When inside the automobile, Lieffring knew the light was on and flashing because it was operated by a flashing unit mounted underneath the dash that made a distinct clicking sound inside the automobile.

The light was visible from the direct front of the automobile and at an angle 45 degrees to the side.

Evidence was submitted tending to show the dependability of the light. Lieffring testified that he had examined the light seven days before the accident and that it was operating normally at that time.

Witness, Officer Everett Biles, had seen the red light on the Lieffring vehicle flashing on previous occasions. He testified that it was plainly visible and understandable at 600 feet during both sunlight hours and at night. Biles further testified that he was the investigating officer at the scene of the accident and that, although he was not sure, it was his recollection that the light was faintly flashing after the accident.

Lieffring testified that he turned the light on when he started for the fire, and that he heard the distinct clicking noise inside the automobile, indicating to him that the light was operating.

Witness, Donald Hartung, operating an automobile stopped at a stop sign at the intersection facing the approach of the Lieffring vehicle, testified that he saw the Lieffring vehicle a block away but did not notice

the red light flashing until the Lieffring vehicle was approximately 143 feet from the intersection.

William Hartung, a passenger in the Donald Hartung vehicle, testified that he was looking directly toward the Lieffring vehicle but saw no light.

Witness, Darrell A. Biederman, who was standing to the side at a gas station located approximately 180 feet from the intersection, testified that he observed the Lieffring vehicle just before impact but saw no light.

The red light was removed by Lieffring following the accident, and appeared at trial to be undamaged by the collision.

The test to be applied in determining whether it was error to have denied a motion for directed verdict in a negligence action is whether there is any credible evidence in the record, that, giving it the construction most favorable to the party moved against, will sustain a defense or cause of action. *Phoenix Ins. Co. v. Wisconsin Southern Gas Co.* (1970), 45 Wis. 2d 471, 173 N. W. 2d 610; *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 151 N. W. 2d 741; *Goebel v. General Building Service Co.* (1965), 26 Wis. 2d 129, 131 N. W. 2d 852. Credibility of witnesses, the weight to be afforded their testimony, and the determination of where the truth lies in those cases presenting a conflict in the evidence is for the jury. *State ex rel. Brajdic v. Seber* (1972), 53 Wis. 2d 446, 193 N. W. 2d 43; *Lehman v. Sentry Ins. Co.* (1967), 35 Wis. 2d 96, 150 N. W. 2d 333; *Kosnar v. J. C. Penney Co.* (1959), 6 Wis. 2d 238, 94 N. W. 2d 642. In a personal injury action, the matter of drawing proper inferences from all the evidence is also for the jury. *Patterson v. Silverdale Resort* (1959), 8 Wis. 2d 572, 99 N. W. 2d 730; *Ennis v. M. A. Hanna Dock Co.* (1912), 148 Wis. 655, 134 N. W. 1051.

In the instant case, considering the evidence most favorable to the defendants and drawing all reasonable

inferences from the facts in their favor, as the jury was free to do, the record demonstrates sufficient evidence to establish that the flashing red light mounted on the Lieffring vehicle was "plainly visible and understandable from a distance of 500 feet" to the front and at an angle of 45 degrees to the side of the Lieffring vehicle.

Plaintiff further contends that although the light may have had an intensity sufficient to make it visible at 500 feet, the light was so mounted and designed as not to be within the requirements of sec. 347.25, Stats., and, therefore, the trial court should have held inapplicable, as a matter of law, the exemptions granted sec. 346.03 to the operator of emergency vehicles and should have held that the defendant Lieffring was negligent as to speed and failing to stop. Plaintiff argues that sec. 347.25 requires visibility of the light in all directions, and that it is undisputed that the light mounted on Lieffring's vehicle was visible only to the front.

It is well settled that in construing a statute, this court must seek the legislative intent as disclosed from the language of the statute in relation to its scope, history, context, subject matter, and object intended to be remedied or accomplished. *State ex rel. Arnold v. County Court of Rock County* (1971), 51 Wis. 2d 434, 187 N. W. 2d 354; *Perry Creek Cranberry Corp. v. Hopkins Agricultural Chemical Co.* (1966), 29 Wis. 2d 429, 139 N. W. 2d 96; *Scanlon v. Menasha* (1962), 16 Wis. 2d 437, 114 N. W. 2d 791.

Secs. 346.03 and 347.25, Stats., constitute a consolidation and generalization of several earlier statutes.[3] Among those earlier statutes pertinent to the instant case are the folowing:[4]

Sec. 85.06 (14), Stats., provided:

"LAMPS ON AUTHORIZED EMERGENCY VEHICLES. (a) Any authorized emergency vehicle may be equipped with

---

[3] Ch. 260, sec. 1, Laws of 1957.
[4] Statutes, 1955.

flashing, oscillating or rotating red lights to warn drivers and pedestrians to yield the right of way when making an emergency run on official business."

Sec. 85.12 (5), Stats., provided:

"EXEMPTIONS TO AUTHORIZED EMERGENCY VEHICLES. The provisions of said sections regulating the movement, parking and standing of vehicles shall not apply to authorized emergency vehicles while the operator of such vehicle is operating the same in an emergency in the necessary performance of public duties. This exemption shall not, however, protect the operator of any such vehicle from the consequence of a reckless disregard of the safety of others."

Sec. 85.40 (5), Stats., provided:

"The speed limitations set forth in this section shall not apply to authorized emergency vehicles when responding to emergency calls and the operators thereof sound audible signal by siren or exhaust whistle, and when such emergency vehicle is equipped with at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of 500 feet *to the front* of such vehicle. This provision shall not relieve the operator of an authorized emergency vehicle from the duty to operate with due regard for the safety of all persons using the highway, nor shall it protect the operator of any such vehicle from the consequence of a reckless disregard of the safety of others." (Emphasis supplied.)

The defendants assert and the trial court was of the opinion that the Motor Vehicle Code adopted in 1957 was merely a revision and codification and did not constitute an amendment of sec. 85.40 (5), Stats., and that sec. 347.25 should be construed as though "to the front" remained in the statute.

A revisor's bill is presumptively not intended to change the law, in the absence of anything in the revisor's notes to indicate that the change was for a purpose other than consolidating several statutes on the same subject.

*Gray v. Wisconsin Telephone Co.* (1966), 30 Wis. 2d 237, 140 N. W. 2d 203; *Holtan v. Bjornson* (1952), 260 Wis. 514, 51 N. W. 2d 719; *Guse v. A. O. Smith Corp.* (1952), 260 Wis. 403, 51 N. W. 2d 24. However, the presumption disappears if there are material changes or additions in the later statute which disclose a different intention. *State v. Hackbarth* (1938), 228 Wis. 108, 279 N. W. 687. Generally, the studied omission of a word or words in the re-enactment or revision of a statute indicates an intent to alter its meaning. *Mundt v. Sheboygan and Fond du Lac R. R. Co.* (1872), 31 Wis. 451.

The legislative committee note of ch. 260, Laws of 1957 (sec. 347.25, Stats.) indicates that the provision requiring the flashing light to be visible for the specific distance during normal sunlight and during hours of darkness constituted a change in the previously existing statute which provided that the light be so visible "under normal atmospheric conditions." Also deleted from the statute were the descriptive words "to the front" relating to the requirements of visual warning equipment. Furthermore, the exemption privileges accorded emergency vehicles under sec. 85.40 (5) were restricted to "speed limitations." Whereas, sec. 346.03 considerably expanded this exemption privilege and included stopping, standing, parking, proceeding past red or stop signals and signs, exceeding speed limits, and regulations governing direction or movement and turning. We are of the opinion that the enactment of ch. 260, sec. 1, Laws of 1957, did change the meaning and intent of the previously existing statute, but not to the extent urged by the plaintiff.

It is common knowledge that there is a great variety in types and uses of emergency vehicles. Sec. 85.40 (5), Stats., was restrictive both as to privileges accorded operators of emergency vehicles and as to requirements for visual warning equipment. The language of secs.

346.03 and 347.25 is such that many different types of emergency vehicles can be accommodated. The particular use of a specific emergency vehicle and the type of visual warning equipment (in this case a front-mounted light) must be considered in determining the emergency privileges claimed by the operator. For example, the front-mounted, visual warning equipment would not extend to the operator the emergency privileges for stopping, parking or turning as to vehicles approaching from the rear.

In the instant case, there is credible evidence that the Lieffring vehicle was equipped with a flashing red light, visible from the front a distance of 500 feet during normal sunlight and at an angle of 45 degrees to the side. This was an intersection accident, therefore, it cannot be said as a matter of law that the light on the Lieffring vehicle failed to meet the requirements of the statute as they relate to the emergency privilege involved in this case. A jury issue was presented and there is credible evidence to support its findings. We have considered the other arguments advanced by the plaintiff and find no prejudicial error.

*By the Court.*—Judgment affirmed.