NATIONAL STEEL SERVICE CENTER, INC., Plaintiff-Appellant, v. WOLLIN SILOS & EQUIPMENT, INC., Defendant-Respondent.†

Supreme Court

*No. 77–222. Submitted on briefs October 8, 1979.—
Decided November 6, 1979.*
(Also reported in 284 N.W.2d 606.)

---

† Motion for reconsideration denied, with costs, on December 21, 1979. HANSEN, J., took no part.

For the appellant the cause was submitted on the briefs of *Roy G. Stohlman, S.C.,* of Appleton.

For the respondent the cause was submitted on the brief of *Neupert & Wakeman, S.C.,* of Lake Mills.

Heffernan, J. The principal question on this appeal is whether the failure of defendant, Wollin Silos & Equipment, Inc., to plead the defense of the statute of frauds as an affirmative defense precludes it from asserting that defense for the first time by a motion for directed verdict at the close of the case of the plaintiff, National Steel Service Center, Inc. We conclude that, under the rules of procedure applicable to this case, commenced prior to January 1, 1976, the defense of the statute of frauds was timely asserted. Because the statute of frauds was not satisfied, we affirm the judgment dismissing National Steel's cause of action.

The plaintiff, National Steel, commenced this action on July 18, 1975, to collect an account arising out of a sale of steel. The action was brought against Wollin Silos and Becker Equipment Corporation. Becker Equipment declared bankruptcy in May of 1975 and a judgment of the bankruptcy court was entered on September 29, 1975, which appointed a receiver and enjoined all creditors, including National Steel, from proceeding further against Becker Equipment. Accordingly, in its present posture, the cause of action is only against Wollin Silos.

The trial was to a jury. At the close of National Steel's case, however, the defendant, Wollin Silos, moved for a directed verdict on the ground that National Steel had failed to show as a matter of law that the sales contract complied with the statute of frauds, secs. 401.206 and 402.201, Stats. The trial court withheld its ruling on the motion. Wollin Silos renewed the motion for directed verdict after the presentation of its case and after National Steel had the opportunity to present some additional testimony. The court then withdrew the case from the jury, granted the motion on the grounds that there had been no compliance with the statute of frauds, and

entered judgment dismissing the action. It is from this judgment that National Steel appeals.

The record shows that Wollin Silos was in the business of manufacturing and erecting concrete silos. Its principal place of business was at Lake Mills, Wisconsin. Becker Equipment produced steel conveyors and farm feeding equipment and had its principal place of business at New London, Wisconsin. It was a user of unfabricated steel; Wollin Silos was not. Prior to the sale at issue in this case, Wollin Silos purchased a controlling interest in Becker Equipment; and Albert C. Wollin, Jr., who was the principal officer of Wollin Silos, became vice president of Becker Equipment. Gordon Becker remained as the president of Becker Equipment but was not an officer, employee, or agent of Wollin Silos.

The transactions giving rise to this lawsuit commenced in March or April of 1974, when Albert Wollin telephoned National Steel and spoke to William Wymelenberg, who was the inside sales manager. Wollin told Wymelenberg that he was an officer of Wollin Silos. Whether Wollin then disclosed his association with Becker Equipment is disputed. Wollin stated in general the type and amount of steel desired, but explained to Wymelenberg that Gordon Becker would call National Steel to detail the specifications of the steel. Wollin told Wymelenberg that the steel should be shipped to Becker Equipment in New London. Gordon Becker followed up on the call and discussed the details of the purchase of the steel. Becker detailed the specifications in a document captioned "Purchase Order, Becker Equipment Corporation, Steel Fabricators" and mailed it to National Steel.

Before the steel could be shipped, Wymelenberg was required to get the approval of Robert Tully, National Steel's local credit manager. Wymelenberg testified that he told Tully that Albert Wollin had placed the order and had done so on behalf of Wollin Silos. The credit department did a credit check on Wollin Silos. The sale on credit was then approved, and the steel was shipped to Becker

Equipment in New London. National Steel mailed its invoice to Wollin Silos. The invoice, a computer print-out, stated that the steel was sold to Wollin Silos but shipped to Becker Equipment. No credit check was run on Becker Equipment at that time, and on its books National Steel never showed Becker Equipment as a customer.

Several sales followed thereafter, and in each case Albert Wollin called Wymelenberg and discussed the order, and Gordon Becker called later to provide the exact specifications. In each instance Becker then sent National Steel a document captioned "Purchase Order, Becker Equipment Corporation, Steel Fabricators." National Steel shipped all the orders to Becker Equipment but sent the invoices to Wollin Silos.

This course of conduct continued and the same procedure was used in placing the order in this case in June of 1974. The order was filled and shipped in September of 1974. Because two shipments were made to fill that order, separate invoices were sent to Wollin Silos in the amounts of $4,420.31 and $3,633.47. These invoices were not paid.

According to National Steel's credit manager, he called Wollin several times in October and November about the account, and on each occasion Albert Wollin promised payment. Wollin denied that he promised to pay National Steel and claims that he told Tully that the billing was incorrect and that the invoices should have been directed to Becker Equipment Corporation. The account was never paid, and this action was commenced on July 18, 1975, against both Wollin Silos and Becker Equipment. After the bankruptcy court's order enjoining further proceedings against Becker Equipment, the trial proceeded only against Wollin Silos.

The answer of Wollin Silos denied that Albert Wollin ever ordered any steel on behalf of either Wollin Silos or on behalf of Becker Equipment.

The defense of the statute of frauds was not raised in the pleadings and was asserted for the first time at the

close of the plaintiff's case. On this appeal, National Steel argues that the trial court erred when it took the case from the jury on motion for directed verdict, because the defense of the statute of frauds came too late and because the evidence at trial could reasonably have led the jury to find that an oral contract was made between Wollin Silos and National Steel which was valid in the absence of a timely statute of frauds defense. Alternatively, National Steel argues that, were this court to hold that the statute of frauds defense was timely asserted, nevertheless, the statute was satisfied, because the purchase order mailed by Becker Equipment to National Steel constituted "a writing in confirmation of the contract" "between merchants," as provided by sec. 402.201(2), Stats.; and, additionally, the shipment of the steel to Becker Equipment made the contract enforceable, because the goods were "received and accepted" by Wollin Silos within the meaning of sec. 402.201(3)(c).

Initially, we point out that there was evidence which, if believed, was sufficient for the jury to have concluded that there was an oral contract between National Steel and Wollin Silos. Wymelenberg testified that Albert Wollin called him, identified himself as a representative of Wollin Silos, and placed an order. This evidence, when examined in the light most favorable to the plaintiff, National Steel, would have been sufficient to defeat the motion for directed verdict had the defense of statute of frauds not been interposed. Whether there is an intent to make a contract is a question of fact, which must be ascertained from the parties' words and actions. *Gerner v. Vasby*, 75 Wis.2d 660, 250 N.W.2d 319 (1976). Although Wymelenberg's testimony was disputed, that testimony, had it been believed by the jury, would have been sufficient to prove the contract.

The proof of an oral contract does not, however, enable the plaintiff to prevail if a statute of frauds defense

is properly interposed. A statute of frauds defense is only appropriate or necessary when there is an oral contract and the oral contract is unenforceable unless there is compliance with the statute of frauds.

An examination of the trial judge's decision from the bench reveals that in ruling on the statute of frauds defense, he implicitly concluded that an oral contract between Wollin Silos and National Steel was proved or provable but was not enforceable because of the statute of frauds. The trial judge took the case from the jury, not because of lack of proof of an oral contract, but because of his legal conclusion that the oral contract, under the circumstances here, was unenforceable as a matter of law.

Under the Code of Civil Procedure which has been in effect in respect to all cases commenced on and after January 1, 1976, an affirmative defense, including the defense of statute of frauds, must be set forth in a pleading responsive to a preceding pleading. Sec. 802.02(3), Stats. This case, however, was commenced prior to January 1, 1976, the effective date of the new rules, sec. 801.01 (3)(a), Stats. The pleading rule applicable to this case, which was commenced on July 18, 1975, is set forth in sec. 263.13, Stats. (1973). Under that rule, a party to a lawsuit was not required to plead the statute of frauds in order to raise the defense at trial. This court stated in *Holtan v. Bjornson*, 260 Wis. 514, 519, 51 N.W.2d 719 (1952):

"[I]t has been the established rule in this state that the defendant's omission to claim and plead the benefit of the said statute of frauds does not constitute a waiver of that defense where it is sufficiently pleaded under a general denial." *Accord: Padgham v. Wilson Music Co.,* 3 Wis.2d 363, 88 N.W.2d 679 (1958); *Flatley Bros. Co. v. Beauregard,* 192 Wis. 174, 212 N.W. 262 (1927).

This rule is based upon the theory that, when a plaintiff seeks to enforce a contract, the proof of that cause of

action necessarily puts in issue all facts necessary for the establishment of a contract and, particularly, its validity in light of the provisions of the statute of frauds. *Holtan* held that a general denial of the type used by Wollin Silos in this case was sufficient to place the statute of frauds in issue during trial.

This rationale is recognized by the leading authorities in the field. See, 3 Williston, *Contracts,* sec. 527, pp. 713–17 (3d ed. 1960) ; 2 Corbin, *Contracts,* sec. 319, pp. 147–50 (1950). This court has, however, held that the statute of frauds must be raised at trial and that it cannot be asserted for the first time on appeal. *Hine v. Vilter,* 88 Wis.2d 645, 277 N.W.2d 772 (1979).

As set forth above, Wollin Silos raised the statute of frauds defense for the first time at the close of the plaintiff's case. Because this action was commenced prior to January 1, 1976, the effective date of the new rules of civil procedure, the rule approved in *Holtan* is controlling, and the defendant was not obliged to affirmatively plead the statute of frauds defense. Wollin Silos, under the *Holtan* rule, timely raised the defense when it was asserted for the first time at the close of the plaintiff's case. The question thus presented is whether the trial court erred by holding that the contract failed as a matter of law to comply with the statute of frauds. We conclude that it did not, and accordingly the subsequent dismissal of the action must be affirmed.

The statute of frauds pertinent to this sales transaction is sec. 402.201(1), Stats., which provides:

"402.201 **Formal requirements; statute of frauds.** (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient

because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing."

National Steel, by its argument, concedes as it must that the contract is unenforceable under sec. 402.201(1), Stats. There was no writing signed by anyone on behalf of Wollin Silos which indicated that there had been a contract for sale between it and National Steel. If the oral contract is enforceable, it is enforceable because of those portions of sec. 402.201 which validate a contract in the absence of the writing prescribed by sec. 402.201(1).

National Steel argues that the provisions of secs. 402.-201(2) and 402.201(3)(c), Stats., are applicable to the facts here and each of these provisions separately makes the oral contract enforceable. Sec. 402.201(2) provides:

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of sub. (1) against such party unless written notice of objection to its contents is given within 10 days after it is received."

This statute is arguably applicable in respect to transactions between National Steel and Wollin Silos, because each of them is a merchant. Sec. 402.201(2), Stats., provides that, as between merchants, a confirmation of a contract which is sufficient against the sender satisfies the formal requirements of sec. 402.201(1) if the recipient has reason to know the contents of the memorandum and the recipient does not give a written notice of objection within ten days. This exception eliminates the formal requirement that the writing must be signed by the party against whom enforcement is sought.

Plaintiff, National Steel, argues that the statute of frauds is satisfied because the invoices which were sent to Wollin Silos constituted "a writing in confirmation of the contract." National Steel points out that the invoices describe the goods and their price and contain the in-

formation that the goods were sold to Wollin Silos and shipped to Becker Equipment. However, the invoices also refer to Becker Equipment's purchase order, and the steel described on the invoices corresponds exactly with the steel listed on the purchase order. The problem with the plaintiff's argument is that the invoices tend to confirm a sale with Becker Equipment and not with Wollin Silos. The invoices unequivocally refer to the purchase order submitted by Becker Equipment. They are confirmatory of that transaction and not of the oral agreement entered into in the telephone conversation with Albert Wollin. That this conclusion is correct is amply supported by the evidence of record.

The trial court correctly concluded that the invoices confirmed a contract obligation by Becker Equipment. The evidence shows that Wollin was a vice president of Becker Equipment and had authority to make purchases for that company. Neither Gordon Becker nor Becker Equipment had authority to bind Wollin Silos. Becker was the person who discussed the details of the purchase with Wymelenberg and determined the exact type and amount of steel to be ordered. Gordon Becker, by a form bearing the caption of Becker Equipment Corporation, submitted the order and specifications to National Steel. National Steel shipped the type and amount of steel ordered by Becker Equipment's purchase order to the Becker Equipment plant at New London. The initial orders were paid for by Becker Equipment and not by Wollin Silos, and when Becker Equipment became delinquent, National Steel attempted to collect from Becker Equipment and commenced a lawsuit in the belief that Becker Equipment was a contracting party. Becker Equipment showed the debt to National Steel on its books and never disclaimed liability for the indebtedness, and apparently listed National Steel as a creditor in the bankruptcy proceedings. Becker Equipment made use of the steel in its manufacturing process, while Wollin Silos had absolutely no use for unfabricated steel. None of the

steel that was the subject of this action was ever transferred to Wollin Silos.

The so-called "writing in confirmation of the contract" fails to confirm that a contract existed wtih Wollin Silos. The evidence in the entire case supports the conclusion that the contracting parties were National Steel and Becker Equipment, and not National Steel and Wollin Silos. The writing relied upon by National Steel is too ambiguous to be probative. The interpretation of that document urged by National Steel is contrary to reasonable inferences that can be drawn from the balance of the record in respect to this transaction.

National Steel also urges that the contract was enforceable although not in compliance with sec. 402.201(1), Stats., because the requirements of sec. 402.201(3)(c) were met. The portion of that statute upon which the plaintiff relies provides that the contract will be enforceable "with respect to goods . . . which have been received and accepted." For National Steel to prevail, it would be necessary to show that Wollin Silos "received and accepted" the steel. That proof is not to be found in the record. Becker Equipment and not Wollin Silos received and accepted the steel. In each instance, delivery was made to Becker Equipment. Sec. 402.103(1)(c) defines "receipt" of goods as "taking physical possession of them." Acceptance of goods is defined by sec. 402.606. Under that statute, acceptance cannot take place "until the buyer has had a reasonable opportunity to inspect them" and either signifies acceptance or "fails to make an effective rejection." Because there never was an opportunity for Wollin Silos to inspect the goods, there could not have been an acceptance. Nevertheless, goods may be "received" by the buyer within the meaning of the statute when they are delivered to a third person acting as a bailee or consignee for the buyer. That conclusion, however, is subject to the qualification stated in

Williston, *Contracts*, Vol. 3, sec. 553, p. 884 (3d ed. 1960):

> "It is also essential, in order to make out actual receipt by the buyer in such case, that there should be assent on the part of the bailee to hold for the buyer. . . .
> "Whether they are then 'received' by the buyer depends upon the terms on which the bailee receives them."

There is no evidence to show that Becker Equipment received the steel as a bailee, consignee, or agent for Wollin Silos. Sec. 402.201(3)(c), Stats., is inapplicable, because Wollin Silos never received and accepted the shipment of steel either on its own behalf or through Becker Equipment as its bailee, consignee, or agent.

We conclude, therefore, that the statute of frauds was applicable and timely raised and that the oral contract allegedly made with Wollin Silos was unenforceable because of its failure to comply with the statute of frauds. Moreover, the facts demonstrate that the failure to comply with the statute was not remedied under either subsec. (2) or subsec. (3)(c) of sec. 402.201. National Steel never received a confirming memorandum which established the existence of a contract with Wollin Silos, and no conduct of Wollin Silos indicated that it acted in a manner to make the alleged oral contract enforceable by receiving and accepting the goods. Whatever proof there was tended to show that National Steel had entered into a contract with Becker Equipment. The cause of action which may have arisen as a result of that contract cannot be pursued because of Becker Equipment's bankruptcy. The trial court correctly withdrew the case from the jury, granted the motion for a directed verdict, and entered judgment dismissing the complaint.

*By the Court.*—Judgment affirmed.

HANSEN, J., took no part.